upon ceased to have any interest whatever in the furniture, or in the privileges and rights defined and set forth in the paper. This successor in interest discharged the plaintiff from her employ, stated that she had bought the furniture from the defendants, and turned the plaintiff out of doors. If this was not a retaking of the furniture under the contract by the vendor's successor in interest it is difficult to see what would be such a retaking. The statute is that, unless the successor in interest of the vendor sells by public auction within 60 days, then the vendee may recover from the vendor (not the vendor's successor in interest) the amount theretofore paid on the purchase price.

The allegation, however, of the complaint, is that the defendants took possession of the furniture, not that their successor in interest did so. It is not believed that the assigning of the lease by the defendants was an act of ownership which was inconsistent with the possession of the furniture by the vendee. When proof was received without objection from the defendants that it was their successor in interest that retook the furniture, the plaintiff established a cause of action under the statute. The vendor becomes liable when his successor in interest retakes possession and no public sale is had. It is not necessary that the vendor should retake possession in order to create a liability against him, and the trial court was undoubtedly correct in holding that the assignment of the lease was not a retaking. The trial court, however, apparently overlooked the statutory provision that, if the vendor's assignee takes possession, then the vendor becomes liable for all purchase moneys paid, provided no public sale is had within 60 days.

These conclusions lead to a reversal of the judgment, and, as the amounts of the payments are so uncertain from the record that a final judgment cannot be safely directed, a new trial is ordered in the City Court, with costs to the plaintiff.

---

(168 App. Div. 187)

### METZGER v. NEW YORK STATE RYS.

(Supreme Court, Appellate Division, Fourth Department. June 9, 1915.)

CONSTITUTIONAL LAW ☞74—REGULATION OF PASSENGER RATES—EXTRA CHARGES—REASONABLENESS—INTERFERENCE BY COURT.

Public Service Commissions Law (Consol. Laws, c. 48) § 28, provides for the filing by the carrier of a schedule of tariffs, together with regulations determining the aggregate of such tariff in each particular case. Section 49 confers upon the commission a supervisory control over such tariffs, and provides that whenever it deems the tariffs or regulations unjust or unreasonable, it may determine the just and reasonable rates and fares, to be thereafter observed. An interurban electric railway company filed a schedule providing for an extra charge to the passenger of 10 cents where he had not purchased a ticket. Plaintiff was ejected from defendant's car for refusal to pay the extra charge, and brought action on the ground that, the regulation being unreasonable, he was justified in refusing to pay. *Held*, that he had no standing to bring the action, the attack being on the rule itself, and not on the manner of its enforcement,

and the reasonableness thereof being for the initial determination of the Public Service Commission, and not for the court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 124; Dec. Dig. ☞74.]

Appeal from Monroe County Court.

Action by George Metzger against New York State Railways. From a judgment for plaintiff and a denial of a new trial, defendant appeals. Reversed and rendered.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Paul Folger, of Rochester, for appellant.

Carlton F. Bown, of Rochester, for respondent.

LAMBERT, J. The action is for assault. The plaintiff boarded an interurban car operated by defendant at that stop known as Glen Edith, a short distance out of Rochester, en route for Rochester. The regular fare from Glen Edith to Rochester was 18 cents, which amount he tendered the conductor in cash. He had no ticket, and in fact had no opportunity to purchase one, inasmuch as the defendant maintains no ticket office at Glen Edith. He was informed by the conductor that the regulations and tariffs of the company provided for an excess charge of 10 cents in case cash fare was paid, for more than 5 cents; that he would be given a duplex ticket receipt, which would be redeemable for 10 cents at any ticket office of the company, if presented within 90 days. The plaintiff refused to pay such excess, and was informed by the conductor that he would have to leave the car if he persisted in such refusal. The plaintiff did so persist, the car was stopped at a regular stop, and plaintiff was removed therefrom. There is no charge made of the use of any unnecessary force, nor was the removal of plaintiff accompanied by any abusive or profane talk. In fact, there is no material dispute in the evidence.

The plaintiff's theory of the action is that the regulation requiring the excess fare was unreasonable, and hence that plaintiff was justified in refusing to pay it. The defense relies upon the fact that the defendant had filed its tariffs, providing for such excess, with the Public Service Commission, that such regulation was reasonable, and that the refusal of plaintiff to comply therewith justified his removal from the car. Plaintiff has had a verdict for $275, and from the judgment founded thereon, and the order denying a new trial, this appeal is taken.

The standing of the plaintiff to bring this action is challenged by defendant. It is urged that the determination of the reasonableness of such a regulation is confided by statute to the Public Service Commission, and is not open to determination by the court. Attention is drawn to sections 28 and 49 of the Public Service Commissions Law in support of such contention.

Section 28 provides for the filing by the carrier with the commission of a schedule of tariffs, together with all rules and regulations to be applied in determining the aggregate of such tariff in each particular

case. In that connection it is proven that such a tariff was filed by this defendant, and that such tariff provides for exactly the excess charge attempted to be made in this case.

. Section 49 of such statute confers upon the commission a supervisory control over such tariffs, and provides that whenever such commission shall be of the opinion that the tariffs, regulations, or practices of the carrier are unjust or unreasonable, after a hearing, either upon motion of the commission or upon a complaint duly filed, such commission shall have power to determine the just and reasonable rates, fares, and charges to be thereafter observed by the carrier.

In this connection it appears that there has been no actual determination by the commission as to the reasonableness of this particular excess charged. Our attention is drawn to a determination by the commission in a similar case. In re Complaint of James Morris v. B., L. & E. Ry. Co., decided January 26, 1910. In that instance the commission approved a practice such as this carrier sought to adopt.

That determination, while instructive as a precedent, does not, of course, have any force other than that of a precedent, and hence is not res adjudicata to this particular case. Neither is there any assistance to be obtained from the cases against steam railroads, inasmuch as section 58 of the Railroad Law (Consol. Laws, c. 49) expressly permits an excess charge of 10 cents in those instances where the passenger is not provided with a ticket. There is no such statute applicable to street railways.

In their general plan, the above sections of the Public Service Commission Law are very similar to Interstate Commerce Act Aug. 24, 1912, c. 390, § 11, 37 Stat. 560. By the Interstate Commerce Act it is provided that the carrier shall file with the Commission its schedule of tariffs, and the Commission is given authority of its own motion, or upon formal complaint and after hearings, to make orders regulating in various manners the tariffs, rates, and practices of the carrier. The structure of the two acts is sufficiently similar to make applicable, as precedents, the authorities under the Interstate Commerce Act as to the jurisdiction of the courts to regulate or determine the reasonableness of the tariffs and regulations of a carrier.

In the case of Pennsylvania Railroad Company v. Puritan Coal Mining Company, 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. ——, this question of jurisdiction was fully gone into, and the court there said:

"There are several decisions, already cited, which hold that suits against railroads for unjust discrimination in interstate commerce can only be brought in the federal courts. But it must be borne in mind that there are two forms of discrimination—one in the rule, and the other in the manner· of its enforcement; one in promulgating a discriminatory rule, and the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission. *It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another.* Until that body has declared the practice to be discriminatory and unjust, no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the Commission has declared the rule to be unjust, redress must be sought before the Commission or in the United States courts of competent jurisdiction, as provided

in section 9 [Act Feb. 4, 1887, c. 104, 24 Stat. 382 (Comp. St. 1913, § 8573)]. But if the carrier's rule, fair on its face, has been equally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved; the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in commerce, may be prosecuted either in the state or federal courts."

The effect of the holding by the United States Supreme Court is. to accord to the filing of the tariff an effect consonant with an actual determination of reasonableness by the Commission. Such a conclusion is, to my mind, to be justified only upon the argument that the carrier is to be restricted only within the confines of the statute, and that by the filing of the tariff such carrier has complied with the full statutory requirement, so that the tariff charged becomes presumably reasonable, and that such presumption obtains until the Commission has otherwise determined in a proceeding to that end.

The above views seem at first sight to be at variance with many of the expressions in Loomis v. Lehigh Valley R. R. Co., 208 N. Y. 312, 101 N. E. 907. A closer examination, however, discloses that there is no necessary discrepancy between the two holdings. In the Loomis Case the question at issue was the obligation of the railroad company to furnish properly equipped cars. There the court said:

"Primarily the question is not one of rates or regulation at all, but of the carrier's failure to perform its initial duty to give the shippers cars fit for the service for which they were furnished."

The application of the decision in Pennsylvania Railroad Company v. Puritan Coal Mining Co., supra, to the present case, cannot be doubted. There is no claim made of any discriminatory application of the rule. The complaint lies against the rule itself, which permitted the making of this excess charge. The question of the propriety of the rule seems to be confided for initial determination to the Public Service Commission. .

These views require reversal, and, inasmuch as there cannot be a recovery under the conceded facts of the case, the complaint should be dismissed. All concur.

Judgment and order reversed, and judgment directed for the defendant, dismissing the complaint, with costs, including the costs of this appeal.