THE CITY OF NEW YORK, Respondent, *v.* THE NEW YORK
EDISON COMPANY and THE UNITED ELECTRIC LIGHT AND
POWER COMPANY, Appellants.

First Department, April 29, 1921.

**Gas and electricity — suit to restrain electric lighting companies
from collecting charges in excess of certain schedules — Public
Service Commissions Law — standard contract riders and defini-
tive coal adjustment charge schedules properly filed — courts will
not interfere till plaintiff has exhausted its remedies before Public
Service Commission.**

In a suit by the city of New York to restrain the defendants from imposing
or collecting any charge in excess of a certain rate schedule in effect July
1, 1917, it appeared that in proceedings before the Public Service Com-
mission prior to said date a maximum rate of eight cents per kilowatt
hour was fixed; that thereafter on an application to reopen the proceedings
the defendants volunteered to reduce the maximum rate from eight
cents to seven and one-half cents for a stated period and to seven cents
thereafter; that in 1919 the Public Service Commission issued what is
known as the coal rider order by which an electric lighting company on
complying therewith might base its charge on the rise and fall of the
price of coal; that the defendants filed with the Commission and pub-
lished standard contract riders in compliance with said order and then
filed and published their definitive coal adjustment charge schedules to
become effective December 1, 1920, under which the price per kilowatt
hour was increased, but not to exceed the eight-cent maximum rate.

*Held,* that while the procedure of filing coal riders was authorized by the
Commission by an express order and the basis upon which the order was
made was that the cost of coal would automatically fix the rate either by
increasing or decreasing it monthly, dependent upon the cost of coal for
a given month, the bringing of this suit by the city of New York, which
was not affected by the claims and charges involved, was not justified
under the law, and the plaintiff should have exhausted its remedies under
section 71 of the Public Service Commissions Law by lodging its complaint
with the Public Service Commission, which is fully empowered to grant
relief in a proper case.

The plaintiff has an adequate remedy at law expressly provided of which
it has not availed itself.

APPEAL by the defendants, The New York Edison Company
and another, from an order of the Supreme Court, made at
the New York Special Term and entered in the office of the

clerk of the county of New York on the 14th day of March, 1921, granting plaintiff's motion for an injunction *pendente lite.*

*William L. Ransom* of counsel [*Thomas H. Beardsley* with him on the brief; *Beardsley, Hemmens & Taylor*, attorneys], for the appellants.

*Joseph A. Devery* of counsel [*Vincent Victory* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the respondent.

GREENBAUM, J.:

Defendants appeal from an order made at Special Term, entered in the New York county clerk's office on March 14, 1921, granting an injunction *pendente lite*, restraining the defendants from imposing or collecting any charge in excess of their " General Rate and Rate A [retail] schedules   *   *   * effective July 1, 1917," and particularly from imposing and collecting any charge based upon standard contract riders Nos. 37 and 22 of defendants, The New York Edison Company and The United Electric Light and Power Company, respectively, both filed November 1, 1920, and effective December 1, 1920, and upon the defendants' schedules, revised sheets Nos. 33 (Edison Company) and 22 (United Company), filed November 26 and 27, 1920, respectively, and effective December 1, 1920.

The defendants were joined as parties by reason of their affiliation with each other, the stock of both corporations being almost entirely owned by the Consolidated Gas Company and the directorate being a common one.   An understanding of the meaning of the injunction necessitates a brief recital of the facts touching the various rates under which the defendants have been operating since 1905.   Prior to July 1, 1905, there was no statutory maximum limiting the rates chargeable by electrical corporations.   By chapter 732 of the Laws of 1905 such companies were limited to the maximum rate of ten cents per kilowatt hour.   By chapter 429 of the Laws of 1907 the Public Service Commission was created and given jurisdiction to regulate rates and practices of electrical and other public service corporations.   This act, known as the Public Service Commissions Law, was amended and revised in

1910 (Consol. Laws, chap. 48; Laws of 1910, chap. 480). On December 18, 1908, pursuant to the power thus vested in it, the Public Service Commission for the First District adopted an order known as No. 823, directing every electrical corporation to file with the Commission, and post and keep open to public inspection, at least thirty days before taking effect, printed schedules of all rates and forms of contract relating to service. This order was subsequently amended from time to time. In compliance with this order defendants filed schedules of their rates and forms of contract with the Commission.

In October, 1911, one George Stadtlander and upwards of 100 other consumers complained to the Commission as to the rate charged by the defendant New York Edison Company. A proceeding was instituted upon this complaint, known as case No. 1395. In April, 1912, one Julius Ewoldt and upwards of 100 other consumers made a similar complaint against the defendant New York Edison Company, resulting in another proceeding known as case No. 1492. Thereafter these proceedings were consolidated and hearings were held therein up to February, 1915. In 1913 two other proceedings, known as 1798 and 1800, were instituted by the Public Service Commission with respect to the rates and practices of said defendant and the United Electric Light and Power Company. These proceedings were similarly consolidated. On November 17, 1914, the Merchants' Association requested the Public Service Commission to institute a valuation of the Edison Company's plant and property, and the association was thereupon permitted to intervene as a party complainant in cases Nos. 1395 and 1492. On February 9, 1915, hearings in all these cases were closed. An order of the Public Service Commission was made in the consolidated proceedings on March 16, 1915, fixing a maximum rate of eight cents per kilowatt hour as chargeable by the New York Edison Company for the period of three years commencing May 1, 1915. It appears that there was no separate order prescribing a rate for the defendant United Electric Light and Power Company. Both these defendants, however, filed revised rate schedules fixing a maximum eight-cent rate to take effect May 1, 1915. On August 21, 1916, the mayor of the city of New York applied to the Commission to reopen cases Nos. 1395 and 1492. The

defendant New York Edison Company thereupon suggested that it was willing to reduce the maximum rate of the general rate schedule from eight cents to seven and one-half cents per kilowatt hour to take effect January 1, 1917, and to continue until July 1, 1917, and from and after the latter date to reduce the maximum rates under the general rate schedule to seven cents per kilowatt hour, " provided on that date the company does not exercise its right to restore the present maximum rate of 8 cents a kilowatt hour." The suggestion was adopted by the Commission without prejudice to the rights of any of the parties. The defendants contend that the reduction to seven and one-half cents per kilowatt hour was a voluntary act on their part. In June, 1917, the defendant New York Edison Company applied to the Commission to continue the seven and one-half cent rate. The application, however, was not approved by the Commission, which decided that the rate be reduced to seven cents and to continue in effect for six months, that is, from July 1, 1917, to January 1, 1918. On December 24, 1917, the defendant Edison Company asked that the *status quo* be maintained for another six months, and a similar request was made by it on June 3, 1918, for an extension for a further six months. The Commission granted the requests maintaining the *status quo* and thereupon again discontinued the proceedings which had theretofore been reopened, but " without prejudice to a further reopening thereof or the institution of such other or further proceeding or proceedings " in the matter, and upon the condition that the seven-cent rate should continue to June 30, 1919. On February 18, 1919, the Commission made a general order amending an order which was made on May 31, 1917, by adding after section 11 thereof a new section known as section 11-a, which reads as follows: " Section 11-a. In case any schedule filed in accordance with the provisions hereof contains a rider or clause providing that the corporation by which the said schedule was filed shall increase or decrease the price per unit to be charged for service furnished or to be furnished by it because of any increase or decrease in the cost to the said corporation of any coal or other commodity by it used in the production and furnishing of the said service, the corporation filing the said schedule shall, provided any increase or decrease

in the price to be charged is to be made, at least three days before sending out bills for the collection of the amounts due it for service furnished file with the Commission and post and keep open to public inspection in its office and in each place where applications for the service furnished by it are received an Original Sheet or Revised Sheet signed by an officer of the said corporation showing the cost to it of coal and other commodity upon which such increase or decrease is based used in the production and furnishing of the service for which bills are to be rendered and setting forth in detail the extent to which the rate or charges to be made or demanded by it are to be increased or decreased and the basis upon which such increase or decrease is to be made."

On November 1, 1920, defendants filed with the Commission and published what have been called the standard contract riders No. 37 and No. 22, respectively, each of which reads as follows: " Further that the price for each kilowatt hour of electric current supplied under this contract shall be subject each month to an addition or a deduction of $.0005 (50/1000 of a cent) per kilowatt hour based on each ten per cent (10%) of increase or decrease from the normal price for bituminous coal of $3.00 per long ton to [The New York Edison Company] [The United Electric Light and Power Company] f. o. b. New York Harbor, as filed with the Public Service Commission for the First District."   According to the defendants, these riders were duly posted and kept open to public inspection in each of the defendants' offices where applications for service are received, in . accordance with the rules prescribed by the Commission for the posting of schedules.   In corroboration of that fact, defendants submitted affidavits from the various managers of the several offices of the defendants and photographs showing how and where the schedules were posted.

On November 26 and 27, 1920, the respective defendants filed with the Commission to become effective December 1, 1920, and published their definitive coal adjustment charge schedules, upon what were called revised sheets No. 33 of the Edison Company and No. 22 of the United Company, fixing the surcharge upon the rate for the month of December, 1920, reading as follows in each case:   " Actual cost of coal to the New York Edison Company for the month of October, 1920,

$8.439 per long ton f. o. b. New York Harbor; an addition of $.009 per kilowatt hour will be made on bills rendered under Rates A, B, C, D, and H and I (for low tension service when supplied) and $.0063 on bills rendered under High Tension Rates, during the month of December, 1920." By the United Electric Light and Power Company: " Actual cost of coal to The United Electric Light and Power Company for month of October, 1920, $8.439 per long ton f. o. b. New York Harbor; an addition per kilowatt hour of $.009 will be made on bills rendered during the month of December, 1920." We have thus outlined the general character of each of the schedules mentioned in the injunction order.

According to the affidavits submitted in behalf of the defendants, it appears that these definitive coal adjustment charge sheets were duly posted and kept open to public inspection in all of the defendants' offices where applications for service are received in the manner prescribed by the rules of the Commission.

The action brought by plaintiff is solely based upon the theory that the filing in the month of November, 1920, with the Public Service Commission by each of the defendants of the various revised sheets just referred to was without authority of law. The claim of plaintiff in this respect is that the Commission had fixed seven cents per kilowatt hour as a maximum rate, and that the defendants had no right to increase the rate by filing the rate schedules above referred to. Plaintiff also contends that, in any event, even if the companies had a right to increase their own rates, they could do so only by filing and publishing amended rate sheets, and that the sheets relied upon by the companies are not rate sheets; that they are invalid and unauthorized, and further that there has been no publication of the rate as required by law. The case, therefore, does not involve the consideration of any question as to whether or not the rates charged by the defendants are justified as giving merely an adequate return upon the capital invested by the defendants in their business and the cost of production of electricity furnished by them.

The position of the defendants in the matter before us is that the rates were posted strictly in accordance with the regulations of the Commission and pursuant to its order made

on February 18, 1919, known as "coal charge" or "coal rider" order. According to the defendants, and the fact does not seem to be disputed, the cost of coal represents at least seventy-five per cent of the combined elements of the labor and materials entering into the cost of generating electrical current, and that "it is the basic commodity of the electric industry, and production cost rises or falls with close correspondence to changes in the cost of coal."

Defendants further claim that when they consented to a reduction of the rate to seven cents per kilowatt hour, effective as of July, 1917, the average cost of coal was three dollars per long ton f. o. b. New York harbor, and that there-after and during the war period the price of coal steadily kept on increasing, and that in the fall of 1920 it reached eight dollars, forty-three and nine-tenths cents per long ton f. o. b. New York harbor.

From the papers before us there hardly seems to be room for serious difference of opinion that the procedure of filing coal riders was authorized by the Commission by an express order, and that the basis upon which the order was made was that the cost of coal would automatically fix the rate either by increasing or decreasing it monthly, dependent upon the cost of coal for a given month. It is claimed by the defendants that this automatic increase or decrease of rate is in all instances controlled by and subject to the maximum eight-cent rate fixed by the Commission, and that up to the present time the increases made from time to time have not reached the maximum.

Plaintiff relies upon a recent decision by Mr. Justice Benedict in the case of *City of New York* v. *Brooklyn Edison Company, Inc.* (N. Y. L. J. March 12, 1921). In that case the court held that the defendant had exceeded the rates fixed by the Public Service Commission on December 22, 1916, and, therefore, it differs essentially from the facts in this case, in which the defendants clearly have not exceeded the eight-cent maximum rate.

Without, however, attempting to determine the question as to whether or not the defendants proceeded strictly in accordance with the orders of the Public Service Commission made within the scope of its authority, and whether they

complied with the technical rules of the Commission as to posting, it seems to us that the bringing of this action may not be justified under the law.

Section 71 of the Public Service Commissions Law provides that the mayor of a city or 100 consumers may make a complaint in writing to the Commission as to the price charged for electricity by any company, and that the Commission " shall investigate as to the cause for such complaint " and hold public hearings thereon. Section 72 of the same law* provides the machinery or procedure to be adopted by the Commission upon such hearings, and section 73 provides for penalties which shall attach for any violation of any order of the Commission. By subdivision 12 of section 66 of the Public Service Commissions Law,* the Commission is vested with the power to make all necessary rules and regulations to carry into effect the provisions of that subdivision, and in the exercise of that power it has the right to reject and return any schedule filed with it unlawfully or improperly. (See *Matter of Proposed $1.75 Rate Schedule of Bronx Gas & Electric Co.*, —— Pub. Serv. Comm. Rep. 1st Dist. ——, decided July 16, 1920, and also subdivision i of section 18 of the order in case No. 823 which reads as follows: " If publication is not according to these regulations this may be considered by the Commission sufficient cause for rejection of schedule or sheet when tendered for filing.")

Section 74 of the Public Service Commissions Law contains a provision for summary procedure by the Commission to enforce compliance on the part of the public service corporations with provisions of law or orders issued by the Commission. (*Public Service Comm.* v. *Brooklyn Borough Gas Co.*, 104 Misc. Rep. 315; 189 App. Div. 62; *Willcox* v. *Richmond L. & R. R. Co.*, 142 id. 44; 202 N. Y. 515.)

On the other hand, if a complaint be made to the Commission upon which it refused to act, its refusal is then subject to review on certiorari at the instance of the complaining consumer or the municipality. (*People ex rel. Joline* v. *Willcox*, 129 App. Div. 267; affd., 194 N. Y. 383.)

It is also to be borne in mind that the claims and charges

---

* Amd. by Laws of 1920, chap. 542.— [REP.

involved in this action do not in the slightest degree apply to and in no way affect the plaintiff, the city of New York, as a consumer, and it is not pretended by the plaintiff that they do. Section 66, subdivision 12, of the Public Service Commissions Law specifically provides that the requirements of the statute as to promulgating rate schedules are not applicable to current furnished a municipality. It is thus apparent that the plaintiff as a municipality has no interest as a consumer in the subject-matter of this action. It has the undoubted right to be the complainant in the general interest of the public since section 71 of the Public Service Commissions Law so provides. But the mere fact that it may have the right to complain does not give it the right to come into court in an action brought solely against electrical companies until it has first exhausted its remedies by complying with section 71 in lodging its complaint with the Public Service Commission which is fully empowered to grant relief in a proper case. In other words, the plaintiff has an adequate remedy at law expressly provided for it, of which it has not availed itself. There is no reason to suppose, nor is any suggested, that the Public Service Commission would not do its duty when called upon according to law. It is not the province of the court to interfere with the regulatory and administrative work of the Public Service Commission. The court should only act where the Commission itself has acted or omitted to act contrary to law. This principle is recognized in *Murray* v. *New York Telephone Co.* (170 App. Div. 17; affd., 226 N. Y. 590). In that case the plaintiff brought an action against the telephone company upon the ground that the tariff filed by it was contrary to legal requirements. The court at Special Term held that such an action may be brought in the first instance in the Supreme Court without first submitting it to the Public Service Commission. The Appellate Division of the Fourth Department held to the contrary, and its judgment was affirmed by the Court of Appeals. Mr. Justice LAMBERT, writing for a unanimous court, said: " It is clear that, except in support of contractual rights, the Public Service Commission and not the courts is the proper tribunal in which to litigate the propriety of rates charged." The court called attention to the case of *Pennsylvania Railroad* v.

*Puritan Coal Co.* (237 U. S. 121, 131), which held that where an attack was made upon the tariff filed, the Commission had exclusive jurisdiction.

In *Metzger* v. *New York State Railways* (168 App. Div. 187) the plaintiff boarded a train operated by the defendant at a place known as Glen Edith, *en route* for Rochester. The plaintiff tendered eighteen cents, which was the amount of the fare from Glen Edith to Rochester. Plaintiff had no ticket, because it appeared the defendant maintained no ticket office at Glen Edith. The conductor nevertheless insisted upon the payment of the excess charge of ten cents, after informing the plaintiff that in case cash fare was paid for more than five cents, the regulations and tariff of the company provided for an excess charge of ten cents for which he would be given a duplex ticket receipt, redeemable at any office of the company if presented within ninety days. Plaintiff refused to pay such excess and was notified by the conductor that he would be obliged to leave the car unless he made such payment. The car was stopped at a regular stopping place; the passenger was removed therefrom, but without any unnecessary force. The court held in its opinion that " the plaintiff's theory of the action is, that the regulation requiring the excess fare was unreasonable, and hence that plaintiff was justified in refusing to pay it. The defense relies upon the fact that the defendant had filed its tariffs, providing for such excess, with the Public Service Commission; that such regulation was reasonable, and that the refusal of plaintiff to comply therewith justified his removal from the car. Plaintiff has had a verdict, and from the judgment founded thereon and the order denying a new trial, this appeal is taken." The court reversed the judgment, holding that the " question of the propriety of the rule seems to be confided for initial determination to the Public Service Commission."

In *Baltimore & Ohio R. R.* v. *Pitcairn Coal Co.* (215 U. S. 481, 493), which involved a question of certain regulations made in the exercise of the administrative powers of the Interstate Commerce Commission, the court said: " When the situation is thus defined we see no escape from the conclusion that the grievances complained of were primarily within the administrative competency of the Interstate Commerce Commission,

and not subject to be judicially enforced, at least until that body, clothed by the statute with authority on the subject, had been afforded by a complaint made to it the opportunity to exert its administrative functions."

It follows that the plaintiff was not entitled to any injunctive relief against the defendants, and the order appealed from is reversed, with ten dollars costs and disbursements, the injunction heretofore granted vacated and set aside, and the motion for the injunction is denied, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.