[S. F. No. 4798.   In Bank.—December 28, 1908.]

## SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, Appellant, v. COUNTY OF STANISLAUS et al., Respondents.

WATER RATES — WATER FURNISHED FOR IRRIGATION — INJUNCTION AGAINST ENFORCEMENT OF RATES—NECESSITY OF APPLYING TO SUPERVISORS FOR READJUSTMENT.—A water company engaged in the business of furnishing water for irrigation purposes in a particular county cannot maintain an action to have declared void orders of the board of supervisors of such county establishing the maximum rates for water to be paid the plaintiff by the inhabitants of such county, and to enjoin the enforcement of such rates, on the ground that the same were unfair and unreasonable, if more than one year had elapsed since the rates were established before the action was commenced, and the company, after the expiration of such year, had made no attempt, by petition to the board of supervisors, to secure a readjustment of the rates, in the manner provided for by section 6 of the act of March 12, 1885 (Stats. 1885, p. 95).

ID.—EXHAUSTION OF LEGAL REMEDIES BEFORE RESORT TO EQUITY.— While the rule that a party must exhaust all his legal remedies before he is entitled to redress in a court of equity has application generally to legal remedies enforceable in an action at law, it is equally applicable so as to require parties who are afforded by statute an opportunity to obtain adequate relief by application to a legislative or administrative municipal body, like a board of supervisors, with reference to the very matter of which they complain in an action in equity, to seek that relief from such body before being permitted to maintain an equitable action for the purpose.

ID.—AMENDMENT OF COMPLAINT—IMPOSSIBILITY OF AMENDMENT.—The refusal of the court to permit a plaintiff to amend his complaint, upon sustaining a demurrer thereto, is not erroneous, when it appears that the complaint was incapable of amendment in a radical particular.

APPEAL from a judgment of the Superior Court of Fresno County.   H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, Garret W. McEnerney, W. B. Treadwell, and Van Fleet & Mastick, for Appellant.

L. J. Maddux, E. H. Hoar, George W. Jones, and Frank Kauke, for Respondents.

LORIGAN, J.—Plaintiff is a corporation engaged in furnishing water for irrigation purposes in the counties of Fresno, Merced, and Stanislaus, and brought this action in the superior court of Fresno County against the county of Stanislaus and the counties of Fresno and Merced, and the boards of supervisors of said three counties respectively, to have declared null and void certain orders of said boards establishing the maximum rates to be paid plaintiff by the inhabitants of each county for water for irrigation of lands therein.

All the defendants demurred to the complaint, and their demurrers being sustained without leave to amend, and judgment being entered thereon against plaintiff, it appeals therefrom.

Referring to those portions of the complaint pertinent for consideration, it is alleged that the plaintiff organized as a corporation in 1871 for the purpose of constructing canals for irrigation purposes, and that since its incorporation it had been engaged in the business of appropriating water for irrigation, sale, rental, and distribution; that it owned and maintained a system of canals and waterworks therefor, heading in the San Joaquin River in Fresno County, and running through Fresno and Merced counties into Stanislaus County, furnishing water through said canals to the inhabitants of said counties of Fresno, Merced, and Stanislaus for irrigation, and that the works used in the appropriation and furnishing of said water to the inhabitants of said counties were of an actual and proper cost of not less than $1,019,763.97.

The complaint then sets forth specifically certain proceedings of the board of supervisors of Stanislaus County taken under the act of the legislature of March 12, 1885, for the purpose of establishing water rates to be charged by plaintiff, and it is alleged that on June 24, 1896, said board estimated the value of plaintiff's canals, ditches, and other property used in the appropriation and furnishing of said water at the sum of $337,000, and the annual reasonable expenses of plaintiff to be the sum of twenty-two thousand dollars, and thereupon made an order fixing certain specified rates for water to be paid by the inhabitants of said county for irrigation purposes, and which the complaint proceeds to declare "then were and ever since have been, grossly unfair and unreasonable, and such that if rates were fixed by the boards of super-

visors of Fresno and Merced in due proportion to the rates so fixed by said board of supervisors of said county of Stanislaus, the net annual receipts and profits thereof to the plaintiff could not possibly amount to six per cent, nor to more than one and one-quarter per cent upon the value of its said property actually used and useful to the appropriation and furnishing of said water."

The complaint then proceeds to allege similar proceedings by the board of supervisors of Merced and Fresno counties in the year 1904, an estimation by said boards of the value of plaintiff's canals, ditches, etc., to be $832,681.20, and its annual expenses relating thereto, $34,943.65, and the fixing of certain water rates to be charged in said counties for irrigation.

It is not alleged that these latter rates of the counties of Merced and Fresno were unreasonable, considered by themselves. It is, however, alleged "that the rates so fixed by the said boards of supervisors of the said counties of Stanislaus, Merced, and Fresno, taken as a whole, are grossly unfair and unreasonable, and will not and cannot insure to the plaintiff, or permit it to receive, net annual receipts and profits in said business of six per cent upon the value of its said canal and other property actually used and useful to the appropriation and furnishing of said water to the inhabitants of said counties, nor more than two per cent upon said value. . . ."

The prayer of the complaint is, that the orders establishing said water rates made by the boards of supervisors of the three counties be declared void and the defendants enjoined from attempting to put in force or enforcing the rates established by them.

The action was commenced on July 28, 1904.

The act of March 12, 1885 (Stats. 1885, p. 95), under which the rates of which plaintiff complains were established by the boards of supervisors of the several counties sued herein, after providing that the use of all water in this state for irrigation, sale, rental, or distribution is a public use, declares that the right to collect the rates therefor shall be regulated and controlled in the different counties of the state by the boards of supervisors thereof. The act provides special proceedings to be taken by said boards for that purpose upon the petition of twenty-five inhabitants who are taxpayers of

any county in which said waters are distributed; provides for a hearing upon the petition after public notice; an estimation of the value of canals, etc., belonging to the person, company, association, or corporation whose franchise is to be regulated and controlled; an estimate of the annual reasonable expenses, etc., of such person, company, association, or corporation, including the cost of repairs, management, and operating of such works; and requires the board of supervisors of the county thereupon to fix the maximum rate at which such firm, company, association, or corporation shall sell, rent, or distribute any appropriated water to any of the inhabitants of the county. In fixing such rates it is provided that, as near as may be, they shall be so adjusted that the net annual receipts and profits of the sale or distribution of such waters to the firm, company, association, or corporation appropriating and distributing them shall be not less than six nor more than eighteen per cent upon the value of the canals, etc. It is further provided that the rates as originally fixed shall be binding and conclusive for not less than one year next after their establishment, and until established anew or abrogated, as the act further provides they may subsequently be.

As to the establishing anew, or abrogating of such original rates, the act then proceeds, by section six thereof to declare as follows: "At any time after the establishment of such water rates by any board of supervisors of this state, the same may be established anew, or abrogated in whole or in part by such board, to take effect not less than one year next after such first establishment, but subject to said limitation of one year, to take effect immediately in the following manner: Upon the written petition of inhabitants as hereinbefore provided, or upon the written petition of any of the persons, companies, associations or corporations, the rates and compensations of whose appropriated waters have already been fixed and regulated, and are still subject to such regulation by any board of supervisors of this state, as in this act provided; and upon the like publication or posting of such petition and notice, and for the like period of time as hereinbefore provided, such board of supervisors shall proceed anew, in the manner hereinbefore provided, to fix and establish the water rates for such person, company, association, or corporation, or any number of them, in the same manner as if such

rates had not been previously established, and may, upon the petition of such inhabitants, but not otherwise, abrogate any and all existing rates theretofore established by such board."

We quote at length this latter section of the act because it was made the basis of the decision of the superior court in sustaining the demurrers of defendants to the complaint. In doing so, that court held that before plaintiff was entitled to invoke the aid of a court of equity to have annulled the order of the board of supervisors of Stanislaus County, it should have appeared from the complaint that plaintiff had exhausted all other remedies; that, as the rates originally fixed by the board of supervisors of that county had been in force for more than a year—in fact, for many years—before this action was commenced, and as section 6 quoted provided that under these circumstances plaintiff might apply to have the rates originally fixed changed or established anew, it was the duty of plaintiff to first apply to the board of supervisors for such re-establishment of rates, and permit said board to readjust and correct them if for any reason they were unjust or unreasonable, before it could appeal to a court of equity to annul them as originally fixed.

It will be observed from the allegations of the complaint that the order of the board of supervisors of Stanislaus County, originally fixing rates for irrigation and other purposes to be charged by plaintiff to the inhabitants of Stanislaus County, was made in June, 1896. This action was not brought until July, 1904. It is apparent, too, from the allegations of the complaint, referring particularly to those portions which we have quoted above, that the gravamen of the complaint of plaintiff is only as to the rates established by the board of supervisors of Stanislaus County in 1896. It is alleged that the rates then established by the board of supervisors of that county are so grossly unfair and unreasonable, that if the same rates were fixed by the boards of supervisors of Merced and Fresno in proportion to those fixed by the board of supervisors of Stanislaus County, the net profits to plaintiff could not amount to the minimum of six per cent, fixed by the act, nor to more than one and one-fourth per cent on the value of the property of plaintiff. It is not complained that the rates fixed by the boards of supervisors of the counties of Fresno and Merced in 1904 are unfair or unreason-

able of themselves, but only that the rates fixed by those counties, taken in connection with those fixed by the board of supervisors of Stanislaus County are as a whole unreasonable and unjust to such an extent that the statutory minimum of six per cent is reduced to less than two per cent. So that the unfair and unreasonable rates of which plaintiff complains are primarily and, it may be said, exclusively the rates established by the board of supervisors of Stanislaus County, and not those established by the boards of supervisors of Merced and Fresno counties.

But if the rates of Stanislaus County were unfair and unreasonable, plaintiff had, under section 6 of the act, ample opportunity to have them changed or modified in the first instance by application to the board of supervisors of that county without at all applying to a court of equity for redress.

While it is true that, under the act, the rates as originally established by the board of supervisors of a county are binding and conclusive for not less than one year, said board must at any time after one year, upon petition by the inhabitants of the county establishing such rates, or by any person or corporation affected thereby, proceed to establish them anew, and in doing so proceed as if they had not been previously established. Once a board had originally established the rates, it was powerless to change them unless upon such petition. The rates originally established by the board of supervisors of Stanislaus County, and of which the plaintiff complained, had been in force for almost eight years when this action attacking the order establishing them was commenced. Of course, during the year after they were established, as the statute made such rates unalterable by the board of supervisors under any circumstances, so as to be effective until the expiration of a year, plaintiff, on their original establishment, or at any time during the year, if it wished to attack them as being unreasonable, would have had to bring an action in equity to set them aside or annul them. During that period it could have no other redress. But after the year had expired, under the provisions of section 6, by simple petition to the board of supervisors plaintiff could have had the matter of the reasonableness of such rates re-examined, and the board, if satisfied that for any reason those rates as originally established were not just, could have fixed reasonable and just

ones.  It was the very purpose of section 6 to permit a re-examination or change of previously established rates; to give any person or corporation, against whom such established rates operated, an opportunity to obtain the very relief which plaintiff seeks to obtain in this action; and we think that as the statute afforded it a remedy and redress by appeal to the board of supervisors at the time when this action was brought, and for many years previously, it should have exhausted this remedy before it was entitled to appeal to a court of equity to annul the order of the board.

It is the general rule that a party must exhaust all his legal remedies before he is entitled to redress in a court of equity. While this rule has application to legal remedies enforceable in an action at law, we perceive no good reason why the general principle may not be extended so as to require parties who are afforded by statute an opportunity to obtain adequate relief by application to a legislative or administrative municipal body, like a board of supervisors, with reference to the very matter of which they complain in an action in equity, to seek that relief from such body before being permitted to maintain an equitable action for the purpose.

In a case involving a consideration of the very statute here in question, and addressing itself to the terms of section 6 thereof, the supreme court of the United States has recognized this principle.  It there said: "Coming now to the merits, the first thing to be noticed is that the ordinance complained of took effect in November, 1897, and that after a year from that date the appellant was free to apply for a modification of the rates.  It did not do so.  There is no allegation or suggestion that the board is corrupt or that it purposes and intends, without regard to evidence, to adhere to unjust rates so as to destroy or impair the value of the appellant's works. Under such circumstances the question arises whether this is much more than a moot case, in view of the principles adverted to in *Tennessee* v. *Condon,* 189 U. S. 64, [23 Sup. Ct. 579], or at least whether the appellant should be required to exhaust its other remedies before coming into court.  In any event the limited effect of the ordinance must be taken into account when we are called on to declare it such a flagrant attack upon the rights of property under the guise of regulation, as to compel the court to say that the rates prescribed will necessarily

have the effect to deny just compensation for private property taken for public use." (*San Diego etc. Co. v. Jasper*, 189 U. S. 441, [23 Sup. Ct. 571].)

It is claimed by counsel for appellant that this statement of the supreme court of the United States was simply *dictum*, as far as the disposition of that case was concerned. Conceding this to be true, it does not follow that the *dictum* of a court is always and at all times to be discarded. A correct principle of law may be announced in a given case, although it may not be necessary to there apply it, because of other principles upon which the case then under consideration may be disposed of. It was not necessary for the supreme court of the United States to apply the principle under discussion in the case in which it was announced because the matter was disposed of for other reasons. It is recognized by that court, however, as a correct principle upon which it might have disposed of it, and it loses nothing of its force as such because it was not applied.

That the principle is a correct and just one is obvious on slight reflection.

No question can be made but that the act of 1885, in as far as it provides that the use of all water appropriated for sale, rental, or distribution in this state should be a public use and subject to regulation and control is valid. (*San Diego etc. Co. v. National City*, 174 U. S. 739, [19 Sup. Ct. 804].)

All that the plaintiff is constitutionally entitled to under it is that its property shall not be taken for public use without just compensation,—a fair return on the reasonable value of its property at the time it is being used for the public benefit. (*San Diego etc. Co. v. National City*, 174 U. S. 739, [19 Sup. Ct. 804].)

This fair compensation under the terms of the act of 1885 it is the duty of the board of supervisors to establish by just and reasonable rates. If it does not do so originally, as the act makes the rates first established unalterable for at least a year, a court of equity may be resorted to at once by the aggrieved person or corporation to have the order establishing them declared void because unreasonable. All, however, that a court of equity can decree is that the established rates are unreasonable, and restrain their collection. It has no power to establish rates or to restrain the board of supervisors from

again fixing them. So that nothing is accomplished by the court in equity except to annul the order in question. As far as the board of supervisors is concerned, it may again proceed to establish them; it has the exclusive power to do so, and when the limitation of one year has expired, the person, company, or corporation in the exercise of the public use, may apply to have the original rates changed or modified if they are deemed unreasonable. As the board of supervisors is the only tribunal which can establish them at all, and as the person or corporation exercising the public use is subject to be controlled by the rates as established when reasonable, it is only proper that such person or corporation should be required to resort to the board for any relief which it is competent to give in order that reasonable rates may be established as the act contemplates. Had the plaintiff petitioned the board of supervisors of Stanislaus County to fix rates anew, as the act permitted might be done, plaintiff would have obtained all the relief to which, under the act, it would have been entitled had the rates originally established been in fact unreasonable, without any necessity of appealing to a court of equity to annul such original rates. The superior court properly sustained the demurrers because the complaint failed to allege such an application before commencing the present action.

Appellant further complains because the court, in sustaining the demurrers, refused it leave to amend the complaint. It is conceded here that in fact plaintiff made no application to the board of supervisors of Stanislaus County for a modification or change of the original order establishing rates, or for the establishment of rates anew before commencing this suit. Hence the complaint was incapable of amendment in this radical particular, and the refusal of the court to permit plaintiff to do so furnishes no ground for complaint.

The judgment appealed from is affirmed.

Angellotti, J., Shaw, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.