THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CITY OF NEW YORK, Appellant, *v.* BELT LINE RAILWAY CORPORATION, Respondent.

**New York (city of) — street railways — power of city authorities to order repavement of street and compel street railways therein. to raise tracks to conform to change in grade or crown of streets — when mandamus will be issued to compel railway to do such work.**

1. Under the Greater New York charter (§ 383) and with the approval of the board of estimate, the president of a borough is charged with the duty of regulating, grading, curbing, flagging and guttering streets and the paving, repaving and resurfacing and repairing of all streets together with the duty of controlling the laying or relaying of surface railroad tracks in any public street, and the restoration of the pavement or surface railroad tracks in any public street, and this provision in connection with the Railroad Law (Cons. Laws, ch. 49, § 178) gives to the borough president and the city authorities the right to repave the streets and to require a railway corporation having tracks in a street to do its part and place its rails in such fashion as to render the street safe and the work complete, whenever such work is reasonably necessary and the repair of the street is undertaken in good faith.

2. Where plans for the repaving a street raise the grade line, or crown, of the street higher in some places than the rails on the northerly side of the track of a street surface railway running through the street, so that the railway company must elevate its rails to conform to the new level, or crown, of the street, such change does not constitute a relocation of the track which must be ordered by the public

service commission under the statute (Public Service Commissions Law [Cons. Laws, ch. 48], § 50), and the city authorities having the power under the Greater New York charter to make such change, if necessary for the repaving, the railway company is required by the statute (Railroad Law, § 178) to raise its northerly track to conform to the new surface grade or level, and if the company fails or refuses to do this a writ of mandamus to compel it so to do should be granted.

*People ex rel. City of New York* v. *Belt Line Ry. Corp.*, 193 App. Div. 92, reversed.

(Argued November 16, 1920; decided November 23, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 9, 1920, which reversed an order of Special Term granting a motion for a peremptory writ of mandamus and denied said motion.

The facts, so far as material, are stated in the opinion.

*John P. O'Brien, Corporation Counsel (John F. O'Brien, Henry J. Shields* and *Walter B. Caughlan* of counsel), for appellant. The borough president is authorized, pursuant to section 178 of the Railroad Law (Cons. Laws, ch. 49) and section 383 of the Greater New York charter (as amd. by L. 1907, ch. 383), to compel defendant to have and keep in permanent repair that portion of Fifty-ninth street between its tracks, the rails of its tracks and two feet outside of its tracks in such manner as he may prescribe, and to compel it to relay its railroad tracks in said street according to the method of construction prescribed by him, and to restore the pavement after such work. (*City of New York* v. *N. Y. Ry. Co.*, 132 App. Div. 156; *Conway* v. *City of Rochester*, 157 N. Y. 33; *Mayor, etc.*, v. *N. Y. & H. B. R. Co.*, 186 N. Y. 304; *City of New York* v. *Whitridge*, 227 N. Y. 180; *Ghee* v. *N. U. Gas Co.*, 158 N. Y. 510; *People ex rel. B., etc., Corp.* v. *Waldron*, 183 App. Div. 807; *Cohen* v. *Goodman & Sons*, 189 App. Div. 209.) Elevation of track rails to the extent of two and one-half inches and a depression to the extent of one and one-half inch in order to conform

to the contour of the surface of a street as newly graded, crowned or arched, does not constitute a " relocation." (*People ex rel. City of Olean* v. *W. N. Y. & P. Tr. Co.*, 214 N. Y. 526.)   The location of the tracks as prescribed by the commissioner of highways in 1897 does not constitute a contract.   The successor of that official is free to direct an alteration in level if, in his judgment, changed conditions render the present level contrary to public interests.   (*N. O. Gaslight Co.* v. *Drainage Com.*, 197 U. S. 445; *Matter of Deering*, 93 N. Y. 361; *Brooklyn E. R. R. Co.* v. *City of Brooklyn*, 2 App. Div. 98; *Stern* v. *Int. Ry. Co.*, 220 N. Y. 284; *Creem Co.* v. *City of New York*, 188 App. Div. 169; *City of New York* v. *H. & M. R. R. Co.*, 229 N. Y. 141; *People ex rel. City of New York* v. *N. Y. Ry. Co.* 217 N. Y. 310.)

*Addison B. Scoville* and *Alfred T. Davison* for respondent.   The present electric street railroad structure in Fifty-ninth street was legally constructed and is now maintained at the grade fixed by the state.   (*People ex rel. Gibbons* v. *Coler*, 41 App. Div. 463; *Matter of Coats*, 73 App. Div. 178; *People ex rel. Blackford* v. *McAdoo*, 101 App. Div. 183; *Rexford Flats Bridge Co.* v. *Canal Board*, 168 App. Div. 558; *People ex rel. Pumpyansky* v. *Keating*, 168 N. Y. 390; *People ex rel. City of New York* v. *New York Rys. Co.*, 217 N. Y. 310.)   The company has express legislative authority to use Fifty-ninth street for street railroad purposes and to maintain its tracks at their present grade, and by express direction of statute such street railroad structure cannot be interfered with by the city.   (*People ex rel. City of Olean* v. *W. N. Y. & P. Tr. Co.*, 214 N. Y. 526.)   The grade at which the tram rails are now maintained was fixed by the state when the railroad was electrified, and no other grade for such tram rails has been fixed by the state or any board or officer having jurisdiction in the premises.   (*People* v. *D. & H. Co.*, 183 App. Div. 149; *People ex rel. City of Olean* v.

*W. N. Y. & P. Traction Co.*, 214 N. Y. 516; *People
ex rel. City of New York* v. *N. Y. Rys. Co.*, 217 N. Y. 310.)
In the absence of a legal change in both the grade of the
street and the grade of the railroad, the company is
entitled to maintain its road at its present grade, and
the borough president in the repaving of Fifty-ninth
street is without authority in law to compel the company
to change the grade of said railroad. (*Matter of T. A.
R. R. Co.*, 121 N. Y. 536.)

CRANE, J. Prior to the ninth day of February, 1917,
the president of the borough of Manhattan requested the
board of estimate and apportionment to appropriate suffi-
cient funds for repaving certain streets in the borough of
Manhattan, among which was Fifty-ninth street between
Fifth and Eighth avenues. The board of estimate there-
upon, by resolution adopted on said date and also on
March 7, 1919, duly authorized an expenditure of the
necessary funds for that purpose. Thereafter the borough
president caused to be prepared the necessary plans for
repaving said West Fifty-ninth street with asphalt on a
concrete foundation which plans were duly approved by
the chief engineer of his office and the commissioner of
public works acting as borough president.

These plans provide for the repaving at a surface grade
level or crown which will, in places, be higher (in some
places as much as two and one-half inches) than the tram
rails of the north track of the street surface railroad
owned, maintained and operated by the Belt Line Rail-
way Corporation through the portion of Fifty-ninth
street mentioned.

In July of 1919 the Belt Line Railway Corporation was
notified in writing of this improvement and directed to
conform its rails to the crowns and grades of the new
surface in accordance with the plans and specifications on
file in the office of the commissioner of public works at the
Municipal Building. The railway corporation, through

its president, in reply to this notice stated that it stood upon its rights and declined to change its rails as requested.

In the event that the city of New York repaves said West Fifty-ninth street between the avenues stated without the tram rails of the north track of the Belt Line Railway Corporation having been made to conform to the surface grade level or crown of the street, the pavement upon the completion of the work will, in numerous places, be inches higher than the surface of said tram rails and as a consequence thereof depressions and traps will exist in the street.

Upon the refusal of the railway corporation to comply with the request of the city, an application was made to the Supreme Court upon a petition setting forth all these facts for an order directing that a peremptory writ of mandamus be issued commanding the said railway corporation to forthwith and at its own expense repair and construct the surface rails so as to conform to the crown of the street as it will be after the repaving improvement.

The material facts not being disputed, the application was granted by the Special Term, but upon appeal the Appellate Division, one justice dissenting, reversed the Special Term and denied the motion.

The city claims that the railway corporation was obliged to do the work demanded, pursuant to section 178 of the Railroad Law (Consolidated Laws, chapter 49), which reads as follows: " Every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe.   *   *   *."

Recognizing that the streets of the city need constant

People ex rel. City of N. Y. v. B. L. Ry. Corp.  91

1920.]                    Opinion, per Crane, J.           [230 N. Y.]

attention and repair and sometimes change from one kind of pavement to another, thereby necessitating changes in the crown or surface, height or slant of the street, the Greater New York charter in section 383 gave to the president of the borough certain powers and in the following language: " The president of a borough * * * shall, within the borough for which he shall have been elected, have cognizance and control: (1) of regulating, grading, curbing, flagging and guttering of streets and laying of cross walks; (2) of constructing and repairing public roads; (3) of paving, repaving, resurfacing and repairing of all streets, and of the relaying of all pavements removed for any cause; (4) of the laying or relaying of surface railroad tracks in any public street or road, of the form of rail used, or character of foundation, and the method of construction, and of the restoration of the pavement or surface after such work; * * *."

The paving of Fifty-ninth street with the slight changes in the contour of the surface of the street was not such a change of grade as required action by and through the board of estimate and apportionment pursuant to section 442 of the Greater New York charter. It was essentially a repaving proposition at an existing and established grade, the surface at some points being a few inches higher than had theretofore existed owing to the nature of the pavement and the shape and form which the surface for engineering purposes was to take.

Neither was it a relocation of tracks within the meaning of *People ex rel. City of Olean* v. *W. N. Y. & P. T. Company* (214 N. Y. 526, 529); *People ex rel. City of New York* v. *New York Railways Company* (217 N. Y. 310) nor *City of New York* v. *Hudson & Manhattan Railroad Company* (229 N. Y. 141). In the *City of Olean* case it was said: " The power to change the grade of a street may fairly be said to involve the power to compel a street railroad to lower or raise its tracks to conform to the new grade; but the power to require a relocation of the tracks

does not appear to be necessary to the exercise of the power to alter and improve streets."

If the grade of Fifty-ninth street had been changed under the charter provisions this respondent would have been compelled to make its tracks conform to the new grade — it would not have been a relocation; so here, the above charter provisions give to the city authorities power to recrown a street on improvement and to force a street railroad to meet the new level.

The contention on behalf of the respondent is that it is the owner of the property and franchises formerly belonging to the Central Park, North and East River Railroad Company which was incorporated under chapter 140 of the Laws of 1850 and acquired all the rights and franchises granted to individuals under chapter 511 of the Laws of 1860. These enactments authorized the construction and operation of a street railroad in Fifty-ninth street between First and Tenth avenues. In 1897 the board of railroad commissioners on the application of the Central Park, North and East River Railroad Company authorized the converting of the then horse railroad on Fifty-ninth street to an electric railroad operated by an underground current of electricity. By agreement with the commissioner of highways of the city of New York, as required by the certificate of the board of railroad commissioners consenting to the change of motive power, the electric track was constructed in Fifty-ninth street on the lines and grades approved and prescribed by the said commissioner and which have, down to the present day, been maintained and kept at that fixed grade.

The railway corporation's claim is that it cannot be compelled to raise one of its tracks to meet the changes caused by repaving unless so ordered by the public service commission acting under the powers delegated to it by section 50 of the Public Service Commissions Law (Cons. Laws, ch. 48). Both the Greater New York charter and the Public Service Commissions Law emanate

from the same source, the legislature of the state, and so far as possible are to be harmonized. The legislature has given to the borough president, under the charter and with the approval of the board of estimate, the duty of regulating, grading, curbing, flagging and guttering of streets and the paving, repaving and resurfacing and repairing of all streets together with the duty of controlling the laying or relaying of surface railroad tracks in any public street and the restoration of the pavement or surface after such work. The repaving of the streets is a very important part of the city government. For failure to make repairs, the city may be held in heavy damages for injuries received in consequence thereof. It seems reasonable that the railroads using the streets should conform their tracks to the conditions required upon repaving when such changes do not amount to a relocation of the track.

Under the Railroad Law, as above quoted, this respondent would be compelled upon notice from the city to repair any holes or defects in the surface of the street between its tracks and two feet on the outside thereof. Fifty-ninth street is to be repaired and repaved and the duty rests upon the railroad corporation to do its share of the repairing under this law as necessity requires. Part of this work consists in the elevation of one of its rails to meet the new crown or surface established by the plans. Some person or body surely has power to direct and control these matters. It cannot be that such work, required in the interest of the traveling public, must rest at a standstill because two bodies of equal authority differ as to requirements. We think that the reading of the charter provisions in connection with the Railroad Law gives to the borough president and the city authorities the right to repave the streets and to require the railway corporation to do its part and place its rails in such fashion as to render the street safe and the work complete. This, of course, is assuming that all

such work is reasonably necessary and that the repair of the street is undertaken in good faith. That the city has proceeded in the utmost good faith to repair Fifty-ninth street and to improve it by a reasonable change in the crown or surface of the highway is not challenged in this application. The respondent, as stated in the letter of its president, relies upon its rights and insists that it can only be compelled to do this work by order of the public service commission. With this contention we disagree and think that the order made by the Special Term was quite proper.

Reference is made by the respondent to that provision of chapter 511 of the Laws of 1860 which says that the use of this street by the railroad shall be considered a public use and that the city of New York and its officers shall do such acts as may be needful to promote the construction and protect the operation of said railroad as provided in the law. We see nothing in this act which is inconsistent with the demands of the city that the railway corporation repair its portion of the highway as required by the Railroad Law and the charter of the city of New York. The railway corporation may be obliged to expend money to make the changes but this is not such an interference with its privilege as a railroad as in any way to affect its franchise or franchise rights. It is only such expenditure as it may be obliged to make to keep the street in repair within the limits prescribed by the Railroad Law or to meet a new and substantial change in the grade of a street re-established by city authorities or to comply with the orders of the public service commission requiring the maintenance of its equipment.

The order of the Appellate Division, therefore, should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., COLLIN, HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur.

Order reversed, etc.