In the Matter of the Application of EARL CARROLL REALTY CORPORATION and EARL CARROLL THEATRE, INC., Petitioners, for a Mandamus Order against THE NEW YORK EDISON COMPANY, Respondent.

Supreme Court, New York County, August 26, 1931.

*House, Grossman & Vorhaus [Alfred Beekman, David Vorhaus and Hiram S. Gans of counsel], for the petitioners.*

*Beardsley & Taylor [Charles I. Taylor, William L. Ransom and Jacob H. Goetz of counsel], for the respondent.*

SHIENTAG, J. This is a petition for a peremptory or alternative order of mandamus to compel The New York Edison Company to furnish direct current service to the petitioners for their new theatre in the amount supplied before the demolition of petitioners' old theatre in August, 1930.

The petitioners base their right to relief upon alleged undue discrimination by The New York Edison Company in refusing them a service allowed to most other neighboring theatres, in several of which similar operations are alleged to have occurred. The defendant denies the similarity of circumstances alleged, and justifies its refusal to renew the supply of direct current by the adoption of a policy which looks to the total withdrawal of direct current service in favor of alternating current. This policy, in its general form, has been approved by the Public Service Commission and is not attacked by the petitioners.

At the outset it should be noted that there is no statutory specification of the character or type of electric current to be furnished

by the Edison Company, nor is there any such common-law obligation imposed upon the company.

There is likewise no regulation or order of the Public Service Commission specifying the type of electric current to be supplied, unless it be contained in the tariff schedules filed with the Commission by the Edison Company enunciating its policy of substituting alternating for direct current service and outlining the conditions under which such substitution will be effected.

It is likewise to be noted that in refusing to furnish direct current to the newly constructed theatre of the petitioners, the Edison Company has not violated any contractual obligation. Whatever its obligation in this respect may have been, it ceased when the old theatre was demolished and a new one constructed in its place.

As a matter of fact, it appears that all electric current produced by the Edison Company is in fact alternating current. Where direct current is to be supplied it is necessary for the electric company to provide an apparatus for changing or converting the alternating current to direct current before delivering it to the user. This conversion apparatus consists of rotating machines which are installed in substations, and which require continuous supervision by a skilled operating force. This involves a substantial expense for construction, maintenance and supervision, and a loss of current during the process of conversion.

The Edison Company contends, and this is not seriously challenged by the petitioners, that alternating current can be produced more cheaply and efficiently than direct current.

It appears from the respondent's affidavits that Edison direct current is rapidly disappearing as a medium of supply throughout the country. Alternating current exclusively is furnished in the borough of Queens; in the borough of The Bronx; in nearly the whole of the borough of Brooklyn; in the borough of Manhattan, north of One Hundred and Thirty-fifth street, and in many of the buildings in the borough of Manhattan south of One Hundred and Thirty-fifth street. Alternating current is furnished exclusively in the surrounding counties. The present alternating current service in Brooklyn is largely the result of a change over from direct current.

The respondent contends in its affidavits that changes and advance in the electrical art and limitation of subsurface facilities in New York city render imperative the development of a uniform distribution system based on alternating current, a form of distribution which in the form of lower cost and greater efficiency of service will. it is stated, redound to the benefits of the consuming public.

So the policy has been fostered of changing from a direct to an alternating current supply in Manhattan. The expense involved, the hardships that would result to customers from any sudden change have necessarily made this transformation a very slow and gradual one.

The general policy, and its soundness is not questioned by the petitioners, has met with the approval of the Public Service Commission, whose experts are more competent to pass upon the technical problems involved than are judicial officers.

The Public Service Commission, acting on the complaint of *Shroder & Koppel, Inc.*, v. *New York Edison Company*, alleging refusal to furnish direct electrical current for power in a building under construction in the borough of Manhattan, referred with approval to this policy of the Edison Company (June 16, 1929, P. U. R. 1929E, 257): "The company is not charged with a refusal to furnish electrical service, but to render a certain kind of service. In view of the fact that the policy of the company to substitute alternating current for direct current is well known to the Commission, and is not disputed as a measure of good business policy, and that no discrimination was being practiced against the complainant in this instance, the complaint should be dismissed."

The question, therefore, resolves itself to this: Is the refusal of the company to supply direct current to the petitioners' new theatre in conformity with its express policy or does it involve a departure therefrom? Is it an unjust, unfair or undue discrimination against the petitioners?

From the affidavits submitted I reach the conclusion that in its dealings with the petitioners it has not been shown that the Edison Company has departed from the policy laid down in its tariff schedules filed with the Public Service Commission, and the conditions therein enumerated. Petitioners have not made out a case of unjust discrimination within the meaning of subdivision 5 of section 66 of the Public Service Law (as amd. by Laws of 1921, chap. 134) sufficient to warrant even an alternative order of mandamus. So far as the peremptory order is concerned, that extraordinary remedy is never resorted to where any material issue of fact is raised, all facts in dispute being resolved in favor of the respondent.

The petitioners have not shown that under the same or substantially similar circumstances or conditions the Edison Company has treated other customers differently from the petitioners. On the contrary, I conclude from the affidavits that the petitioners do not come within the exception from the rule for alternating current service, because direct service in the new theatre building

cannot be rendered without the making of additions to, reinforcements of or alteration to the company's supply facilities.

I shall assume for the purposes of this proceeding that electrical stage illumination as required by petitioners can be obtained only by the use of direct current, although this contention is disputed by the respondent.

It appears, however, that it is perfectly feasible for petitioners themselves to install, in a convenient location, converting or translating equipment to convert or translate the Edison Company's alternating current supply to direct current of whatever voltage petitioners may desire for their own use, without sacrificing any artistic or special lighting effects and at a cost that can hardly be said to be prohibitive. Indeed, it was pointed out that alternating current is furnished exclusively to the theatre in Atlantic City where the new Earl Carroll production was recently presented and that by means of the theatre's generator set it was partly converted to direct current used for the operation of electrical equipment in the performance. To this the petitioners in their brief frankly respond: " When we come into that theatre with our attraction, it is of little moment to us whether the supply of direct current comes into the building as direct current or is converted from alternating to direct current with expensive apparatus belonging to the theatre."

It seems, therefore, to come down to a question of who is to pay for the machinery to convert the alternating current into the required amount of direct current. In such a situation petitioners can hardly claim that they have no other remedy available to them than a resort to the extraordinary power of the courts here sought to be invoked.

Even if the petitioners had set forth facts showing that they properly fall within the rule of the respondent company upon which they rely, and that they have been discriminated against unfairly, the present application would have to be denied, inasmuch as the petitioners have not exhausted their proper remedies before the Public Service Commission, which has authority over the issues raised by the instant case. The petitioners were advised by the Edison Company of its refusal to supply direct current in ample time to apply to the Public Service Commission for redress of their grievance. Whatever the petitioners' rights would have been had they promptly sought to enjoin the disconnection of the respondent's connections, and whatever they may be in an action for damages, should the respondent continue in its refusal to supply the demanded current and the expected results of that refusal become actualized, it is well settled that the order of mandamus will not issue where the petitioner has not exhausted its alternative legal remedies.

(*People ex rel. N. Y. & H. R. R.* v. *Board of Taxes*, 166 N. Y. 154; *City of N. Y.* v. *N. Y. Edison Co.*, 196 App. Div. 644.)

There is no merit in the contention of the petitioners that they may ignore their remedy before the Commission as nugatory for the reason that the Public Service Law fails to provide for the formal initiation of proceedings by an aggrieved individual. This court will not presume that the Commission is unwilling to carry out in the public interest the power which it has been given by the Legislature of conducting hearings and issuing orders when apprised by private communication of unjustly discriminatory practices on the part of public utilities. The Public Service Com mission has entertained complaints similar to those of the present petitioners in *Hess* v. *Iroquois Natural Gas Co.* (24 State Dept. Rep. 671); *Shroder & Koppel, Inc.,* v. *New York Edison Co.* (P. U. R. 1929E, 257) and other cases. (See Pub. Serv. Law, §§ 65, 66, 71, 72; *People ex rel. Woodhaven G. L. Co.* v. *Public Service Comm.,* 203 App. Div. 369; affd., 236 N. Y. 530.) An unjustifiable refusal to consider the present petitioners' grievance would be controllable by an order of mandamus to compel the exercise of the Commission's quasi-judicial powers. (See *Beatty* v. *Board of Managers of Binghamton City Hospital,* 130 Misc. 181, 184.) An unjustifiable ruling of the Commission would be reviewable by certiorari. That even in the absence of statutory provisions requiring a Commission to hear and prosecute the complaints of individual consumers, the power of the Commission to do so must be invoked before a mandamus order may issue was decided by the Court of Appeals in *People ex rel. Linton* v. *B. H. R. R. Co.* (172 N. Y. 90).

Cases cited by the petitioners involving the determination of contractual obligations of public service companies (*e. g. City of Syracuse* v. *New York State Rys.,* 189 N. Y. Supp. 763) are not here in point. No contract for the furnishing of direct current service is alleged. Cases in which consumers have sought to preserve the *status quo* by injunction (*e. g., Fulton Light, Heat & Power Co.* v. *Seneca River P. Co.,* 119 Misc. 729; affd., 206 App. Div. 731) are also clearly distinguishable.

The case of *People ex rel. City of New York* v. *Belt Line Railway Co.* (230 N. Y. 86; motion for reargument denied, Id. 590) dealt with a situation in which, under the charter of New York city and the Railroad Law, that city had the power to demand reasonable alterations in the defendant's roadbed. This statutory power was quite independent of the powers of the Public Service Commision, and in deciding that it could, like the power of the Commission itself, be enforced by mandamus, the Court of Appeals did not

abolish or diminish the province of the Public Service Commission to " determine and prescribe * * * just and reasonable * * * classifications, * * * acts and regulations to be done and observed " by sellers of electricity. (Pub. Serv. Comm. Law, § 66, subd. 5, as amd. by Laws of 1921, chap. 134.)

Certainly sound policy would seem to dictate that courts should not interfere by summary adjudication or by the extraordinary remedy here sought, in matters highly technical in character and often far reaching in their economic consequences, until they have been considered and passed upon by the trained body established for that very purpose and especially equipped to examine into the intricate facts commonly involved in public utility problems. The claim of the petitioners that they are about to stage an artistic production which ought not to be delayed and that the situation is emergent will have to yield to a higher public interest.

The application for a peremptory or alternative writ of mandamus is accordingly denied.

Order signed.