OKLAHOMA PUBLIC WELFARE
COMMISSION et al. v. STATE
ex rel. THOMPSON.

No. 29183.    Sept. 17, 1940.

105 P. 2d 547.

———

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., W. R. Wallace, and William M. Franklin, all of Oklahoma City, for plaintiffs in error.

Charles Besly, of Pawnee, for defendant in error.

DANNER, J. The plaintiff filed an application with the county assistance board of Pawnee county for assistance under the Oklahoma Social Security Act (article 4, chapter 24, S. L. 1936; 56 Okla. St. Ann. §§ 161 to 189). Upon the county board's recommendation, the Oklahoma Public Welfare Commission approved his application and made him a grant of certain monthly payments. Later the county board reviewed his case and rec-ommended cancellation of his grant, whereupon the commission ceased payment thereof on August 25, 1938. Plaintiff then went to the director of the county assistance board, a Mrs. Hawes, and requested a rehearing and further investigation, and was advised by Mrs. Hawes that "if conditions had not changed there was no use of a rehearing or further investigation, that he was off the roll and would stay off."

The plaintiff's attorney then consulted Mrs. Hawes and requested forms for application for appeal, and was told by her that they did not want to deal with attorneys, but that if plaintiff would come over she would make out the forms for his appeal; that she would recommend that plaintiff make a new application, if conditions had changed, and that in that case the county board would reconsider and recommend that plaintiff be put back on the rolls; but that if conditions had not changed, there was no use to make a new application or to appeal.

Plaintiff did not make any application or attempt any appeal, but filed a mandamus action in the district court of Pawnee county against the Oklahoma Public Welfare Commission, which has its offices in Oklahoma City. The foregoing are the controlling facts, according to the stipulation upon which the case was tried. It was also stipulated that plaintiff "meets all the requirements of eligibility to social security" as provided by the law, but said stipulation was made on the date of the trial, January 12, 1939, which was almost five months later than the date upon which his grant was canceled. However, as will be seen, the principle of law upon which we base our decision would call for the same result even if it had been stipulated that he met said requirements when his grant was canceled.

The trial court held for the plaintiff, granting the writ of mandamus. The defendant Oklahoma Public Welfare Commission appeals.

The defendant contends that the removal of plaintiff from the rolls was an act involving the exercise of judgment and discretion, and that said removal was

not an abuse of discretion, nor arbitrary or capricious, and that mandamus does not lie in such a case. It is also argued that "where a government creates, by statute, claims against itself and makes payments similar to those called for by the Oklahoma Social Security Act to certain classes of persons, there is no constitutional right of judicial review, by mandamus or otherwise, and where no review is provided for in legislative terms, the administrative remedies afforded are exclusive."

The court prefers not to pass upon either of those contentions in the present case. Whatever may be the correct answer or solution thereof, we are convinced of the soundness of defendant's third proposition, to the effect that in any event it is necessary that an applicant exhaust the administrative remedies provided by the statute, before he should be permitted to litigate in court the question of whether he should or should not be placed on the assistance rolls. But for the statute he could obtain no assistance at all. If he seeks the aid of the statute, it is but right that he should be willing to comply with it, before asking aid of the courts. The statute plainly provides for an appeal, both in the matter of originally granting assistance and in the matter of modifying or revoking former grants. Sections 8 and 9 of the act (56 Okla. St. Ann. §§ 168, 169) provide, in part:

"* * * If the application is not acted upon by the county board within a reasonable time after the filing of the same, or if denied, the applicant may apply for a hearing before the commission. The commission shall, upon receipt of such request, give the applicant a fair hearing both as to his eligibility and as to the amount of assistance to be granted, in such manner and form as may be prescribed by it. The commission may make such additional investigation as it may deem necessary and shall make final decision as to the eligibility for assistance and the amount of assistance granted the applicant. An applicant whose application for assistance has been denied by the commission may not reapply for assistance until the expiration of twelve months from the date of the previous application unless there shall have oc-

curred a material change in conditions which may warrant a new application in a shorter period of time.

"(a) All assistance grants made under this act shall be reinvestigated by the county board as frequently as may be required by the commission. In all such cases the commission shall have the power to modify or revoke its former grant. The same right of hearing shall be accorded an aggrieved applicant as provided in section 8 hereof."

(Above sections were amended May 9, 1939. S. L. 1939, pages 85, 90; 56 Okla. St. Ann. §§ 168, 169, pocket part.) If the applicant were not required to exhaust his administrative appeal, prior to seeking the aid of the courts, he would be in the position of claiming a benefit conferred by one part of the act and at the same time disclaiming a burden imposed by another part of the act.

Although of relatively recent origin, the rule requiring resort to an administrative remedy providing for the correction of an injury, before a complainant may receive judicial relief, is well established. It is most frequently applied in cases where the wrong is committed by an administrative agency and an appeal within the agency is provided for the correction of the wrong. Application of the principle to public assistance litigation in the normal case is simple enough: an applicant for or recipient of public assistance is dissatisfied with a decision concerning his application or his assistance; instead of appealing within the department, a procedure which must be afforded if the plan is in conformity with the Federal Social Security Act, he institutes suit in court without even making an initial application through regular channels. It seems reasonable that in either type of case he should be required to exhaust the remedy prescribed by the statute before resorting to the courts.

The doctrine of exhaustion of administrative remedies is primarily a procedural rule going to the operation of the courts. It is grounded on notions of propriety. Westling v. United States, 64 Fed. 2d 464. It has been said that the

rule is voluntarily adopted by the courts as a rule of discretion. United States v. Abilene & Southern Ry. Co., 265 U. S. 274, 68 L. Ed. 1016. It is a question of judicial administration. Myers v. Bethlehem Shipbuilding Corp., 303 U. S. 41, 82 L. Ed. 638. Another basis of the rule is the desire on the part of the courts to have the advantage of prior expert consideration of the matter. Towers Management Corp. v. Thatcher, 271 N. Y. 94, 2 N. E. 2d 273. Some courts express concern with the abandonment of the normal procedure prescribed for settling issues and are frankly fearful of a possible flood of litigation unless the litigants are compelled to make at least an attempt at ironing out their difficulties before the administrative tribunal. United States v. Sing Tuck, 194 U. S. 161, 48 L. Ed. 917; Town of Kearney v. State Board of Taxes and Assessment, 103 N. J. L. 26, 135 A. 61. Other courts indulge a presumption that the agency, if given a complete chance to pass upon the matter, will decide correctly. Kansas City v. Public Utilities Comm., 103 Kan. 473, 176 P. 324. Where one party is a governmental agency, it may be argued that until the agency itself has actually had an opportunity to consider the case by its highest officers (that is, by an administrative appeal), there is no final action by the agency and hence possibly no real dispute. First Nat. Bank v. Albright, 208 U. S. 548, 52 L. Ed. 614.

One of the simplest illustrations of the working of the rule is found in United States v. Sing Tuck, supra. There the petitioner alleged that he was a citizen seeking to return to the United States. An immigration inspector decided against his claim of citizenship, and he failed to follow the statutory provision for appeal to the Secretary of Labor, but sought instead a writ of habeas corpus. The court denied relief, saying that the act "points out a mode of procedure which must be followed before there can be a resort to the courts." The opinion goes on to state that even though it be contended that the administrative officers were acting without jurisdiction, "it is one of the necessities of the administration of justice that even fundamental questions should be determined in an orderly way."

We notice a very recent decision of the Supreme Court of California, Abelleira et al. v. District Court of Appeal (Cal.) 102 P. 2d 329, which contains a very exhaustive treatment of the subject. The question was whether certain employers could resort to the courts prior to determination of their appeal under the California Unemployment Insurance Act. The act provided for an appeal within the California Employment Commission. The employers signified their intention of appealing within the commission, but applied to the District Court of Appeal for mandamus and other relief, whereupon the employees filed in the Supreme Court a petition for a writ of prohibition, to restrain the District Court of Appeal from proceeding with the case. The writ of prohibition was granted, the court holding that the District Court of Appeal did not have jurisdiction, because of the failure of the employers to exhaust their administrative remedy of appeal. We quote from a portion of the decision:

"Lack of jurisdiction in the District Court of Appeal to issue its writ of mandate is clearly established when the foregoing principles are considered in connection with a settled doctrine of administrative law. The Unemployment Insurance Act, summarized above, contains a complete administrative procedure, with provision for one original determination and two appeals, fulfilling every requisite of due process of law. Until that administrative procedure has been invoked and completed, there is nothing that the District Court of Appeal or any other court may review; it cannot interfere in the intermediate stages of the proceeding. The employers have no standing to ask for judicial relief because they have not yet exhausted the remedies given them by the statute. They still have their appeal to the commission, which appeal has not yet been decided adversely to them, and prior to the prosecution of this appeal they have no right to demand an extraordinary writ from a court.

"This is the doctrine of 'exhaustion of administrative remedies.' In brief, the

rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act. The authorities to this effect are so numerous that only a few of the more important ones need be cited here as illustrations." (Citing many cases.) * * *

"The rule itself is settled with scarcely any conflict. It is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of stare decisis, and binding upon all courts. We are here asked to sanction its violation, either on the ground that a valid exception to the rule is applicable or that despite the uniformity with which the rule has been applied, it may be disregarded by lower tribunals without fear of prevention by the higher courts. This last point cannot be too strongly emphasized, for the rule will disappear unless this court is prepared to enforce it. To review such action of a lower court only on appeal or petition for hearing *would permit interference with the administrative proceeding pending the appeal or hearing, with the effect of completely destroying the effectiveness of the administrative body.* The writ of prohibition can alone operate surely and swiftly enough to prevent this unfortunate result; and only if we recognize that the rule is jurisdictional will it be uniformly enforced. Bearing in mind the analysis of jurisdiction which has heretofore been made, and examining the authorities dealing with the rule, we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts."

Almost the same situation as we have here existed in State ex rel. v. Superior Court, 193 Wash. 465, 76 P. 2d 306, where the court denied mandamus because the petitioner had not exhausted his administrative remedy, in that he had not perfected an administrative appeal. We quote therefrom:

"Chapters 111, 156, and 180, Laws of 1937, established an administrative state department to serve as a state agency in the administration of all public assistance programs.

"It seems to us from a consideration of the statutory enactments that the Legislature intended to and did provide not only for old age assistance, but also for *the manner* in which it could be obtained and also defined the procedure necessary to be followed.

"It is apparent that relator Henry W. Lung did not follow the procedure provided by chapter 180, Laws of 1937. Had he done so, he would have a right to appeal to the board of county commissioners regardless of the action, or lack of action, on the part of the administrator because section 12, chapter 180, allows an appeal upon the expiration of a reasonable time after the application was presented. Not having availed himself of the provisions of the effective statute, chapter 180, Laws of 1937, he cannot now invoke the aid of the courts.

"The application for the writ of mandate will be denied."

We find the following in another similar case, McAvoy v. Ernst, Director of Department of Social Security, 196 Wash. 416, 83 P. 2d 245:

"From the record it appears that respondent applied to the administrator of the welfare department of King county, asking old age assistance, and that upon rejection of his application, respondent caused the administrator's ruling to be reviewed by the county commissioners, which board affirmed the decision of the administrator. It does not appear that respondent, upon denial of his application by the board of county commissioners, appealed to the director of social security, as required by Laws of 1937, chap. 180, p. 697 (Rem. Rev. Stat. (Sup.) sec. 10007—101 et seq.).

"In the case of State ex rel. Shoemaker v. Superior Court, 76 P. 2d 306, this court, sitting en banc, unanimously held that chap. 180, Laws of 1937, supra, applied to such a situation as is here presented. While the respondent directed to the director of the department of social security his notice of appeal to the superior court, it clearly appears that respondent did not appeal to the director from the adverse ruling of the board of county commissioners.

"Respondent having failed to follow the statutory procedure governing such

cases, it must be held that respondent's application has never been presented to or considered by the proper state agency established by law for determining such matters.

"The trial court, then, erred in hearing respondent's appeal and taking evidence in support of his claim, and the judgment appealed from is accordingly reversed, with instructions to dismiss respondent's appeal to the superior court."

The following texts and authorities may also be cited: 48 Yale Law Journal, 981; 51 Harvard Law Review, 1251; 35 Columbia Law Review, 230; 12 N. Y. University L. Q. Review, 393; 28 Michigan Law Review, 637; 28 Cal. Law Review, 129, 151, 154, 162; Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150 (rate orders); Porter v. Investors' Syndicate, 286 U. S. 461, 468, 52 S. Ct. 617, 76 L. Ed. 1226 (investment commissioners and permit of investment company); Gorham Mfg. Co. v. State Tax Commission, 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279 (tax board); Red River Broadcasting Co. v. Federal Communications Commission, 69 App. D. C. 1, 98 F. 2d 282, 284; Western Powder Mfg. Co. v. Interstate Coal Co., D. C., 5 F. Supp. 619, 621; Hegeman Farms Corp. v. Baldwin, 293 U. S. 163, 172, 55 S. Ct. 7, 79 L. Ed. 259 (liquor control board); United States Navigation Co. v. Cunard S. S. Company, 284 U. S. 474, 52 S. Ct. 247, 76 L. Ed. 408 (shipping board); DePauw University v. Brunk, D. C., 53 F. 2d 647, 652; Palermo Land & Water Co. v. Railroad Commission, D. C., 227 F. 708; Hammerstrom v. Toy Nat. Bank, 8 Cir., 81 F. 2d 628 (tax board); American Bond, etc., Co. v. United States, 7 Cir., 52 F. 2d 318; Monocacy Broadcasting Co. v. Prall, 67 App. D. C. 176, 90 F. 2d 421; Federal Trade Commission v. Claire Furnace Co., 274 U. S. 160, 174, 47 S. Ct. 553, 71 L. Ed. 978; St. Clair Borough v. Tamaqua, etc., Ry. Co., 259 Pa. 462, 103 A. 287, 289, 5 A.L.R. 20; Corstvet v. Bank of Deerfield, 220 Wis. 209, 263 N. W. 687, 697; Earl Carrol Realty Corp. v. New York Edison Co., 141 Misc. 266, 252 N.Y.S. 538, 543; Teeter v. Los Angeles, 209 Cal. 685, 290 P. 11; Collier & Wallis v. Astor, 9 Cal. 2d 202, 70 P. 2d 171; San Joaquin, etc., Co. v. Stanislaus County, 155 Cal. 21, 27, 99 P. 365; Dawson v. Los Angeles County (Cal. Sup.) 98 P. 2d 495.

But it has been suggested that an appeal would have been fruitless, and that where it plainly appears that an appeal would be of no value, the applicant does not have to complete administrative procedure before resorting to the courts. Assuming existence of such an exception, there still is no basis for the contention that the appeal would have been fruitless. However incorrect the director of the county board may have been, it does not follow that the Public Welfare Commission would likewise have erred, and would have been unwilling to place plaintiff back on the rolls. When a recipient is removed from the rolls he is sent a letter from the director, as a matter of form, so notifying him. But the commission consists of several members, and even if the chairman thereof should personally be of the opinion, on an appeal, that the plaintiff was not entitled to assistance, a majority of the commission might differ with him. Certainly the county director's personal statement that it would be of no use to appeal is not a sufficient basis for the assumption that an appeal would have been useless, any more than a similar statement of opinion by a trial judge in an ordinary court action would of its own force render an appeal futile. We suppose that the great majority of judicial and administrative officers believe in the correctness of their rulings, and that they will be affirmed on appeal, yet experience shows that appeals are very frequently successful.

It has been suggested that the fact that the Public Welfare Commission has defended itself in this action indicates that an appeal would have been of no avail. Under such a theory the commission could never defend itself at all in such an action, for the very act of defending would by court fiat amount to a confession of judgment. It may very well be that if plaintiff had appealed to the commission, and put on his evidence (which the commission has never heard,

sitting as a commission), it would have reinstated plaintiff, yet upon being sued it would defend itself as a matter of course. Furthermore, in failing to defend this court action it would have subjected itself to court costs. Additionally, the trial court entered a $200 attorney's fee judgment against the commission, from which the commission could hardly have appealed if it had not defended. We think, furthermore, that the commission was within its rights in withholding aid even to the point of defending in this action, until the plaintiff had first complied with the statute by appealing, as hereinbefore discussed, which statute is as binding upon the commission as it is upon the plaintiff; and a disregard of the provisions of the statute by the commission might possibly have endangered federal aid. We do not agree that the mere fact that the commission defended itself, when sued, indicates that an appeal would have proved futile.

Having arrived at the foregoing conclusions, it is unnecessary to discuss defendant's contention that attorney's fees are unauthorized in such an action.

The judgment is reversed and the cause is remanded, with directions to dismiss the petition without prejudice to plaintiff's right of appeal within the agency as set forth in the statutes.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, GIBSON, HURST, and DAVISON, JJ., concur. RILEY and CORN, JJ., dissent.

---

RILEY, J. (dissenting). I would not be averse to a modification of the trial court's judgment limited to the extent that peremptory writ of mandamus be held in abeyance pending exhaustion of the administrative remedies by petitioner below, Thompson, but I cannot sanction the directed dismissal of the action. The Oklahoma Public Welfare Commission, at most, is but an administrative agency of the state government (section 3, art. 25, Constitution, adopted July 7, 1936, Okla. St. Ann. Const., p. 373). Like unto an individual citizen, it is not above the law, but subject to the lot of humanity: error.

Herein the trial court attributed arbitrary action to this agency. The evidence of record supports the view.

Epitomized, the agreed facts are:

Prior to August 25, 1938, the name of George M. Thompson, of Pawnee county, was upon the assistance rolls as provided by the Oklahoma Social Security Act (art. 4, sec. 24, S. L. 1936, 56 Okla. St. Ann. §§ 161-189) and he received a grant of $11 per month, and possessed all legal requirements for the grant (sec. 4 of the act), but the county board recommended cancellation of the grant. The commission approved the recommendation, and payment ceased August 25, 1938.

The agreed reason for the approved recommendation of removal of the name from the rolls and cessation of payment is "that he (Thompson) has relatives able and willing to support him." Contrariwise, in effect, form, and substance, it was agreed below, in writing, that Thompson did not have relatives able and willing to support him, that he was an elderly person, living in a "bunkhouse—utility provided," and the limited ability of relatives to give Thompson support was shown by contributions of a 65 cent shirt on October 20, 1938, two suits of underwear valued at $1.50, and a necktie of the value of 25 cents contributed on Christmas Day, also some food and a pair of blankets. These things were furnished by two daughters who were likewise agreed to be without means and themselves unable to support their father.

The commission pleaded below that the recommendation and order aforesaid, so agreed to be erroneous, was res adjudicata and conclusive. Wherefore, it was urged, the petitioner could not resort to the courts for relief, but was to be limited to administrative consideration.

Such bureaucratic government is antagonistic to the American way, for there is planted in Magna Carta and fully de-

veloped in Oklahoma's modern fundamental law the idea, which forms part of the Bill of Rights (section 6, art. 2, Constitution of Oklahoma), that "The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong."

The commission contends:

"* * * There is no constitutional right of judicial review, by mandamus or otherwise, and * * * administrative remedies afforded are exclusive." But, while affording no relief, the majority decline to sustain this theory.

Abhorring the array of class against class, I shall not enter upon an academic discussion of the symposium of property rights versus human rights, except for the purpose of suggesting that the people of the state and nation, knowing Anglo-Saxon civilization was built in large measure on the sanctity of individual property rights, sought to ameliorate pitiful conditions of mankind, some of which were recognized in the Declaration of Independence, to elevate the lot of humanity to a plane where in governmental consideration right and justice would prevail, regardless of subject matter involved, whether it be pieces of silver or humanity.

In a measure this was the purpose of the people in adopting the constitutional amendment of July 7, 1936, and providing a Social Security for "protection" and "benefit" of the individual citizen.

Prior to that change in fundamental law, an indigent or destitute person may have had, as suggested in the brief, only a privilege to receive charity such as a benevolent individual or government saw fit to grant, and then such a person may have been limited to whatever means were selected by the donor for distribution of alms. Thereafter it seems certain the privilege was transformed into a right—a right to partake of that appropriated for the relief of all similarly situated. This government effectively said in its law:

"Assistance shall be given * * * to any citizen * * * possessing * * * qualifications."

Thompson admittedly possessed all qualifications, and thus established a clear legal right to relief.

We are now concerned only with the character of relief to which Thompson is entitled. The majority predicate an opinion upon the general rule requiring exhaustion of administrative remedies as a prerequisite to relief in court. Applicability of that rule is dependent upon whether the administrative relief is adequate and appropriate. Myers v. Bethlehem Shipbuilding Corp., 303 U. S. 41, 58 S. Ct. 459, 82 L. Ed. 638; National Labor Relations Bd. v. Jones and Laughlin Steel Corp., 301 U. S. 1, 57 S. Ct. 615, 81 L. Ed. 893, 108 A. L. R. 1352.

Of course, an appeal from the county board's action here involved to the Oklahoma Public Welfare Commission, as provided by statute, sections 8 and 9 of the act, supra, is administratively appropriate. Adequacy of that relief is doubtful. Two years ago Thompson was old, infirm, and in want. It may well be expected that the life of him may be exhausted while he exhausts the administrative remedy. Under these circumstances, and in view of the agreed facts by which no elements of discretion or the exercise of judgment exist to determine whether Thompson should be upon the rolls, an exception to the general rule should be made, sustaining the trial court's issuance of the writ of mandamus, at least the alternative writ should be maintained pending final action by the Oklahoma Public Welfare Commission. State v. Kelly (N.M.) 202 P. 524, 21 A. L. R. 156.

My views are in accord with the Chief Justice of California and his two associates, ably expressed in Abelleria v. District Court, etc., (Cal.) 102 P. 2d 346, that cause being quoted at length and relied upon by the majority:

"Power reposed in an administrative board does not constitute it an autocratic body to the extent that it may, uncon-

trolled and with impunity, exercise its power contrary to the provisions of the act which created it."

I am authorized to say that Mr. Justice CORN concurs in this dissenting opinion.