FRANK HEWITT, Respondent, *v.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

Argued April 24, 1940; decided October 8, 1940.

*E. R. Brumley* and *Samuel W. Earnshaw* for appellant.

*Allen McCarty* and *Donald B. Riker* for respondent.

LEHMAN, Ch. J. The defendant railroad maintains in the borough of the Bronx a terminal known as its Harlem River Terminal. Carload shipments of freight consigned to points on the defendant's railroad lines and received by the defendant from the Lehigh Valley Railroad and other railroads at terminals on the New Jersey side of New York are transported on car floats by the defendant to its Harlem River Terminal and from there are hauled by the defendant over its track to the consignees. In the Harlem

River Terminal the defendant maintains a building known as the Bronx Produce House, divided into sections which the defendant leases to fruit and produce merchants for use by them for offices and storehouses. Carload shipments consigned to these merchants are delivered there. The plaintiff is a wholesale fruit and produce commission merchant and maintains his principal place of business in two sections in that building which he leases from the defendant railroad company.

The season for the delivery of juice grapes at the Harlem River Terminal starts in August and ends in December in each year. The plaintiff and other commission merchants who are competitors of the plaintiff receive carloads of juice grapes, during the season, at the Harlem River Terminal. The defendant railroad makes rules and regulations for handling the cars containing such grapes. For the season of 1925 it decided to allot track room for 125 cars in its Harlem River Terminal for delivery of grapes and, in August, 1925, it gave notice to all connecting railroad lines that it had placed an embargo on all shipments of grapes intended for delivery at Harlem river, New York, " except shipments covered by permits issued by the undersigned." Claiming that, in the application of the embargo and of the regulations for handling the shipment of grapes and in the grant of permits during the period when the embargo was in force, the defendant had given " undue and unreasonable preference and advantage to certain of plaintiff's competitors and subjected plaintiff to an undue and unreasonable prejudice " by acts set forth in the complaint, as amplified by the bill of particulars, the plaintiff, in this action, has sought damages for the violation of the defendant's duty to render service to all members of the public without unreasonable or unfair discrimination.

In its answer the defendant denied the material allegations of the complaint and in separate defenses it alleged, *first,* that the court has no jurisdiction over the subject-matter of the action since it is founded upon " an alleged undue and unreasonable preference or advantage by defend-

ant against the plaintiff in the conduct of defendant's business as a common carrier in interstate commerce, and there has been no adjudication by the Interstate Commerce Commission, which by the Federal statutes has full jurisdiction in the premises, of such alleged undue and unreasonable preference or advantage," and, *second*, that in all things the defendant acted " in full and exact compliance with the provisions of the Interstate Commerce Act * * * and in accordance with defendant's tariffs and official classifications." The action was tried by the court without a jury and thereafter the court rendered a decision containing more than three hundred findings of fact. The court found that in many instances, recited in separate findings, the defendant had discriminated unfairly and unreasonably against the plaintiff by delaying or refusing shipments consigned to him and by transporting to the plaintiff's competitors at the Harlem River Terminal cars consigned to them though such cars were received from the connecting carriers later. Upon those findings the court granted judgment in favor of the plaintiff for the consequent damages. The judgment has been unanimously affirmed by the Appellate Division.

The record on this appeal recites that it contains only the pleadings, the " defendant's request for conclusions of law which were refused, the decision and the judgment appealed from." The defendant does not challenge the sufficiency of the evidence to sustain the findings. It challenges only the jurisdiction or power of the court to pass upon the issue of unfair and unreasonable discrimination or to grant judgment upon findings of such discrimination before the Interstate Commerce Commission has determined that such discrimination exists. Tested by rigid technical rules of pleading and practice there may be some doubt whether the answer or any other part of the record properly presents the question of law which the defendant seeks to bring up for review. We disregard possible technical defects there since it is not disputed that the question was actually litigated and decided in the courts below.

At common law, railroad carriers are under a duty to serve all persons without unjust or unreasonable advantage to any. So this court has said that a carrier should not " be permitted to unreasonably or unjustly discriminate against other individuals to the injury of their business where the conditions are equal. So far as is reasonable all should be treated alike; but we are aware that absolute equality cannot in all cases be required, for circumstances and conditions may make it impossible or unjust to the carrier. * * * The facilities for loading and unloading may be different in different places, and the expenses may be greater in some places than in others. Numerous circumstances may intervene which bear upon the cost and expenses of transportation, and it is but just to the carrier that he be permitted to take these circumstances into consideration in determining the rate or amount of his compensation. His charges must, therefore, be reasonable, and he must not unjustly discriminate against others, and in determining what would amount to unjust discrimination all the facts and circumstances must be taken into consideration. This raises a question of fact which must ordinarily be determined by the trial court." (*Root* v. *Long Island R. R. Co.*, 114 N. Y. 300, 305.)

Congress, exercising its constitutional power to regulate interstate commerce, has in the Interstate Commerce Act (41 U. S. Stat. 474; U. S. Code, tit. 49, § 1 *et seq.*) commanded carriers in interstate commerce to perform the duties prescribed or defined in the act and has provided remedies for failure by a carrier to perform such duties. The act declares, however, that " nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." (§ 22, subd. 1.)

The duty of a carrier to refrain from unjust and unreasonable discrimination in interstate commerce has been formulated in the act as follows: " It shall be unlawful for any common carrier subject to the provisions of this chapter to make, give, or cause any undue or unreasonable preference

or advantage to any particular person, company, firm, corporation, association, locality, * * * or any particular description of traffic, in any respect whatsoever or to subject any particular person, company, firm, corporation, association, locality, * * * or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." (§ 3, subd. 1.)

A carrier is, under the provisions of the act, liable for the full amount of the damages caused to any person or persons by any act of the carrier in the statute "prohibited or declared to be unlawful" or for omission to do any act in the statute "required to be done." (§ 8.) Any person or persons claiming to be damaged "may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter in any district court of the United States of competent jurisdiction * * *." (§ 9.)

The act does not relieve carriers from common-law duties or deprive shippers and consignees of common-law rights except where it so provides expressly or by necessary implication. It has been said that " the provisions of the interstate commerce act prohibiting unjust and unreasonable charges and unjust discrimination are merely declaratory of the common law." (*Lowry* v. *Chicago, B. & Q. R. Co.*, 46 Fed. Rep. 83, 85.) The act does more, however, than prohibit such wrongs. To afford effective means of preventing or redressing the wrongs resulting from unjust discrimination and unfair preference, the statute confers upon the Interstate Commerce Commission the administrative power and duty to require a carrier to make reasonable schedules of rates and to adopt reasonable rules and general administrative practices which must be uniformly observed. Though under the express terms of the statute common-law remedies may be invoked by an injured party for breach of a common-law duty and an action may be maintained in a State court against a carrier for " damages caused by delay

in shipment; damages caused by failure to comply with its common law duties and the like " (*Pennsylvania R. R. Co. v. Puritan Coal Mining Co.*, 237 U. S. 121, 130); yet in such an action for damages the court may not pass independent judgment, calling for technical knowledge, upon a rate schedule, rule or administrative practice which is challenged as unreasonable or discriminatory, where divergence of opinion in different tribunals might render ineffective the statutory " prohibition against preferences and discriminations." It has been said that there is " indissoluble unity " between that prohibition and the provisions of the statute which confer upon the Commission administrative powers and duties — including the power to sanction or condemn carriers' rate schedules, rules and practices — in order to assure to all uniform and reasonable treatment. (*Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 440.)

In every case cited by the defendant where resort to the Commission was required before an aggrieved party could recover from a carrier damages caused by its disregard of the prohibition against preferences and discrimination, the act or omission by the carrier of which complaint was made would find justification in the carrier's filed schedules or in its rules or administrative practices if the Commission should sanction such schedules, rules or practices and the issue presented in each case was whether the schedule, rule or practice relied upon by the carrier was in fact unreasonable or discriminatory. In such cases " preliminary resort to the Commission is required * * * because the inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission." (*Great Northern Ry. Co.* v. *Merchants Elevator Co.*, 259 U. S. 285, 291.)

That is true where the asserted grievance is that the carrier's schedules or rules of practice disregard significant differences in conditions and fail to give to the person aggrieved the service which is reasonable in the light of

conditions affecting him alone, and thus place him at a disadvantage in competition with others not subject to the same conditions, and it is true where the asserted grievance is that variations in the carrier's schedules or rules of practice, though intended to meet varying conditions, are unreasonable and cause unfair discrimination in favor of the competitors of the aggrieved party. (Cf. *Western & Atlantic R. R. Co.* v. *Georgia Public Service Commission,* 267 U. S. 493; *St. Louis, Brownsville & Mexico Ry. Co.* v. *Brownsville Navigation District,* 304 U. S. 295; *Northern Pacific Ry. Co.* v. *Solum,* 247 U. S. 477; *Morrisdale Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 304; *Mitchell Coal & Coke Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 247.)

The principle of these cases has no application, however, where the asserted grievance is not that a rule of practice is unreasonable or discriminatory but that the rule of practice is unequally applied.

" It must be borne in mind that there are two forms of discrimination — one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. * * * But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits though against an interstate carrier for damages arising in interstate com-

merce, may be prosecuted either in the state or Federal courts." (*Pennsylvania R. R. Co.* v. *Puritan Coal Mining Co.*, *supra*, pp. 131, 132.)

Here the plaintiff does not complain that the limitation by the defendant of track room for handling shipments of grapes or the embargo placed by the defendant on such shipments "except shipments covered by permit" was unreasonable or invalid. His asserted grievance is that the carrier discriminated unfairly against shipments to him, while the embargo was in force, either by granting permits for shipments to his competitors in preference to earlier shipments to him or by disregarding the embargo and handling cars consigned to his competitors though no permit had been granted.

The court has found that on many occasions the defendant railroad failed to sign permits, requested by the plaintiff for the transportation of carloads of grapes consigned to the plaintiff and which had been transported by the Lehigh Valley Railroad to the point of connection of its tracks with the tracks of the defendant and when, on other occasions, the defendant railroad did sign such permits, it delayed delivery to the plaintiff, though it did issue permits requested by competitors of the plaintiff who, like the plaintiff, had their place of business at the Harlem River Terminal or without permits it transported carloads consigned to them which had arrived at the same connecting point over the tracks of the Lehigh Valley Railroad several days later than the carloads consigned to the plaintiff. Such acts, the court found, constituted "discrimination against plaintiff and in favor of his said competitors," and also found that such discrimination was "unreasonable." Nothing contained in these findings requires or even permits an inference that the decision of the court awarding damages to the plaintiff could, in any manner, hamper the defendant in the performance of its duty to grant to all fair and equal service in accordance with the commands of the Commission or could in any way hamper the Commission in the exercise of the administrative powers and duties conferred

upon it in order that it might compel such service. Nor does it appear that in making its decision the court determined any question, where the " inquiry is essentially one of fact and discretion in technical matters," involving the reasonableness of any rule of practice of the defendant.

The defendant, however, points out that the court also found at its request that " during the grape season of 1925 a representative * * * was stationed at the Harlem River Terminal and placed in charge of the issuance of permits under the embargo;" and that " in the issuance of permits * * * it was left largely to the discretion of the representative of the defendant in charge of the issuance of permits to determine whether or not a permit should be issued, whether or not the number of cars for which permits were requested should be limited and to estimate the conditions which would probably exist upon arrival of the cars for which permits were requested." The defendant, according to the findings, relied upon connecting railroads to which permits had been issued to follow its instructions in connection with the use of these permits, yet " as a result of an extensive investigation made by the defendant by checking way bills against permits it was found that a considerable number of cars had arrived at the Harlem River Terminal in excess of the authorization on various permits, that permits issued for a certain number of cars had been applied to a larger number of cars." The court made no finding whether that situation was due to misconduct on the part of the defendant's representative or to failure by other railroads to follow instructions sent to them, coupled with misplaced reliance by the defendant on the railroads to follow such instructions; but the defendant urges that the findings demonstrate that the court rested its award of damages upon a determination that the defendant's rules of practice in applying the embargo were inadequate and unreasonable and were the cause of the alleged discrimination. The defendant insists, consequently, that the " complaint, in reality, challenges the reasonableness or adequacy of the administrative arrangements themselves, it is essentially

a rule or practice that is being attacked, and the case is for the Commission."

Since the record on appeal does not include the evidence presented at the trial, the appellant cannot be heard to say that the findings of unreasonable discrimination are not based upon evidence that the discrimination was due to misconduct on the part of its representatives rather than to the inadequacy of its "administrative arrangements;" but even if we should assume that the finding of discrimination is based solely upon evidence that the defendant's administrative methods in applying the embargo were insufficient to enable it to detect the fact that connecting lines were not observing the defendant's instructions or to assure fair and equal treatment to all, yet the fault of the defendant would still lie in the fact that it *applied* the embargo, intended to provide fair and equal treatment to all, in a manner which resulted in unfair discrimination against the plaintiff. Such discrimination is prohibited by the statute and the statute does not confer upon the Commission any power, by approval of an inadequate administrative system, to sanction or excuse such discrimination. Certainly where the findings show that an embargo or other general rule has been unequally applied and the "suit is for damages occasioned by its violation or discriminatory enforcement," and the findings do not show that any practice of the railroad would, if approved by the Commission, justify, even though it might explain, such discriminatory treatment, it cannot be said that the suit raises a "question * * * which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission" in accordance with the test formulated in *Pennsylvania R. R. Co.* v. *Puritan Coal Mining Co.* (*supra*).

The judgment should be affirmed, with costs.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Judgment affirmed.