In the Matter of ROCHESTER GAS & ELECTRIC CORPORATION, Petitioner, against MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York et al., Respondents.

Supreme Court, Special Term, Albany County, September 27, 1947.

*T. Carl Nixon, Earl L. Dey, Edmund B. Naylon* and *George Foster, Jr.,* for petitioner.

*Philip Halpern* for respondents.

*Allen E. Throop, William W. Golub* and *James B. Liberman* for General Public Utilities Corporation, intervener, petitioner.

BOOKSTEIN, J. Petitioner is a public utility corporation. General Public Utilities Corporation, hereinafter referred to as " General," is the sole holder of all of the issued and outstanding common capital stock of the petitioner, and seeks to intervene in this proceeding. Petitioner has instituted this proceeding under article 78 of the Civil Practice Act to review an alleged final determination of the respondents hereinafter referred to as the " Commission ", and " General " seeks to intervene in that proceeding.

The " Commission " opposes the application of " General " to be permitted to intervene and moves to dismiss the proceeding on two grounds: first, that the determination sought to be reviewed is not final and that therefore this proceeding does not lie under subdivision 3 of section 1285 of the Civil Practice Act; and second, that the petition does not state facts sufficient to entitle the petitioner to the relief sought.

The matters thus raised will be disposed of in inverse order. For the purposes of the motion to dismiss for insufficiency, all of the allegations in the petition must be deemed to be true, and, taken as true, the petition does state a cause of action. Therefore, the motion to dismiss for insufficiency must be denied.

The question of whether or not petitioner seeks to review a final determination presents a more difficult problem. By section 38 of the Stock Corporation Law it is provided that a corporation subject to the provisions of the Public Service Law shall not file such a certificate as is authorized by section 36 of the Stock Corporation Law, with respect to changes in its shares of capital stock or capital nor shall the Secretary of State file such a certificate unless there is indorsed thereon the approval of the " Commission " having jurisdiction of such corporation. Thus, in this case, petitioner could not file such a certificate without such approval of the " Commission ".

Under section 69 of the Public Service Law, a corporation such as petitioner may issue stocks, bonds and other evidences of indebtedness payable at periods of more than twelve months after the date thereof when necessary for the acquisition of property, the construction, completion, extension or improvement of its plant or distributing system and for certain other purposes provided that there shall have been secured from the " Commission " an order authorizing such issue, and the amount thereof, and stating the purposes for which the issue or proceeds thereof are to be applied, and that, in the opinion of the " Commission ", the money, property or labor to be procured or paid for by the issue of such stocks, bonds, notes or other evidences of indebtedness is or has been reasonably required for the purposes specified in the order.

Petitioner asserts that it finds itself in the position of having to raise capital for the purpose of refunding outstanding obligations at a lower rate of interest and for the acquisition and extension of additional plant and facilities in order adequately to serve the public within its orbit. In order to comply with section 69 of the Public Service Law and to obtain the indorsement required by section 38 of the Stock Corporation Law, petitioner

filed its petition with the " Commission " setting forth the facts upon which it is claimed by it that it is entitled to the indorsement required by section 38 of the Stock Corporation Law and to a determination that it is entitled to issue the securities more fully described in its petition, consisting of new shares of capital stock and bonds, the proceeds of which are to provide for urgently needed construction and the redemption of outstanding bonds.

This petition was filed with the " Commission " on February 20, 1947. The ultimate relief asked by the petitioner in the petition filed with the " Commission," as shown by the prayer for relief in said petition, is the indorsed approval and consent of the " Commission " on its proposed certificate of authorization of new shares of common stock and the authorization of the " Commission " to issue and sell $16,677,000 aggregate principal amount of first mortgage bonds; 50,000 shares of preferred stock, Series G., of the aggregate par value of $5,000,-000 and 75,000 shares of common stock without par value, or such lesser number of shares of common stock as shall be necessary to realize $2,000,000 to the petitioner. Part of the proceeds of the proposed financing is to be used to refund $7,657,000 of the principal amount of bonds outstanding. The balance of the proceeds is to be used to defray the cost of new construction, etc.

Since the petitioner is a subsidiary of " General " which is a registered holding company, petitioner was required to resort to competitive bidding for the securities proposed to be issued by it by reason of the provisions of the Public Utility Holding Company Act of 1935 (U. S. Code, tit. 15, § 79 et seq.) and rule U-50 promulgated thereunder by the Securities and Exchange Commission, although it appears that in some circumstances the Securities and Exchange Commission may waive the requirement for public bidding. Thus, before petitioner can issue its securities, it must have the approval of the " Commission " and also that of the United States Securities and Exchange Commission. It appears that before the Securities and Exchange Commission will authorize the issuance of securities, it must have some reasonable assurance that the proposed issue will have the approval of the " Commission " required by section 69 of the Public Service Law.

It seems to be recognized that prior to the enactment of the Public Utility Holding Company Act of 1935, and rule U-50 promulgated thereunder, the practice was for a utility company, such as petitioner, to make a private arrangement for the sale of its securities to underwriters or a syndicate. Under that

practice, it was a simple matter for a utility company to make an arrangement with the underwriters, agreeable to both parties, subject to the approval of the " Commission " and the utility company could then present to the " Commission " a program of financing, complete in every detail, for approval or disapproval.

Under the competitive bidding system this is impossible, since the utility company cannot know the precise terms on which its securities are to be sold until after the competitive bidding has been completed. The utility company is confronted with the problem of going to the expense and trouble of submitting its proposed securities for sale at public bidding and such sale would have to be made subject to approval by the " Commission ". Only in that way can a final complete financial plan be presented to the " Commission " in a petition for the approval required by section 69 of the Public Service Law. Although this condition has arisen since the enactment of the Public Utility Holding Company Act, no legislation has been enacted establishing a more flexible method for simultaneous compliance with section 69 of the Public Service Law and the Public Utility Holding Company Act or for that matter, is it at all certain that any legislation could be enacted without relaxing that degree of control over utility corporations which the State has found necessary and desirable.

In part, at least, to meet this situation, the " Commission " devised a practice known as " advisory resolutions " under which a utility company presented its petition for the approval required by section 69 of the Public Service Law, with the financial plan presented in as complete a form as is humanly possible without an actual prior private sale thereof and without actual prior public bidding therefor. By that procedure the " Commission " in the proceeding passes what is called a socalled " advisory resolution " either approving the proposed financing or making suggestions for changes in the proposed plan, which resolutions are regarded as morally binding on the " Commission " to issue a final order or authorization pursuant to section 69 in accordance with the " advisory resolution ".

Apparently, the public utility corporations have recognized the existence of the device worked out by the " Commission ", a device dictated by necessity, and of undoubted wisdom. The existence of such procedure was recognized by the petitioner which in its petition stated that *assuming* that the " Commission " should adopt an appropriate resolution, the petitioner proposes to issue an invitation for the submission of competi-

tive bids for the purchase of its bonds and thereafter for the sale of 50,000 shares of preferred stock and thereafter for the sale of additional common stock to " General " at the price of $2,000,000 to petitioner and that if " General " refuses to purchase the shares of common stock, then petitioner, on the assumption that the " Commission " will adopt an appropriate resolution, proposed to sell the smallest number of shares of common stock necessary to realize $2,000,000 by issuing invitations for submission of competitive bids.

The proposed financing was as full and complete as it could be made without an actual bid, at either public or private sale; as to the bonds, it fixed minimum and maximum interest rates and minimum and maximum selling prices; as to the preferred stock, it fixed minimum and maximum selling prices and minimum and maximum dividend rates; as to the common stock, it provided that if " General " purchased it could have 60,000 shares for $2,000,000. If the sale of the common stock was the result of competitive bidding, the total price was to be $2,000,-000 and the competition would be as to the number of shares of common stock to be acquired for that sum, not exceeding 75,000 shares. Except for a very narrow compass, therefore, a complete financial plan was presented from which it could at least be determined fairly accurately what would be the minimum and maximum cost of the money to be obtained by the petitioner.

The " Commission " held hearings and as a result passed several so-called advisory resolutions making suggestions for the imposition of certain conditions, before the " Commission " would give its approval of petitioner's requested security issues. Although these recommendations were not to the liking of the petitioner, it agreed thereto without prejudice to its contention that they were not warranted and requested that its original petition be deemed amended accordingly.

Finally, on June 3, 1947, the " Commission " passed a resolution imposing additional conditions, to the giving of its approval, under section 69 of the Public Service Law to which the petitioner violently objected. It refused to accept the conditions and accordingly, on June 18, 1947, filed with the " Commission " a petition withdrawing its earlier acceptance of proposed conditions, suggested by the " Commission ", standing on its original petition and prayer for relief, asserting that the resolution of June 3, 1947, was, according to its understanding, not an " advisory resolution " but a final determination and if the " Commission " also regarded it as a final determination, asked for a rehearing.

On July 10, 1947, the " Commission " denied petitioner's petition of June 18, 1947, and " stood pat " on the record without giving any indication other than by its action as to whether or not it regarded its resolution of June 3, 1947, as a final determination or not.

It now claims that this proceeding is premature on the ground that the action of June 3, 1947, did not constitute a final determination but only an advisory resolution. It takes the position that when the petitioner in its petition filed June 18, 1947, asked the " Commission " whether its action of June 3, 1947, was final or not, in effect, petitioner was asking for a declaratory judgment on the part of the " Commission " itself, as to whether its action was final or not. Even assuming that to be so, there is no reason why a public administrative body charged with certain regulatory powers over the petitioner should cloak in mystery whether or not its action is final or otherwise, in a matter of such importance. Petitioner was entitled to know, at least, whether the " Commission " so regarded it so that it might proceed properly and promptly according to law. Except possibly for nomenclature, the action of the " Commission " of June 3, 1947, and July 10, 1947, has every element of finality. The petitioner in accordance with law and the practice before the " Commission " applied for certain definite authorization and approval. It was entitled to a determination granting or denying the same. The fact that, in the process of considering the application, the petitioner and the " Commission " negotiated on advisory matters did not deprive petitioner of the right to an ultimate determination. If the parties could agree on the matters concerning which the " Commission " gave its advice, then the matter would be disposed of by voluntary agreement. If they could not agree on these matters of advice given by the " Commission ", then the " Commission " could exercise its quasi-judicial function and make its determination on the basis of the petition presented, with its advice rejected.

When the " Commission " on June 3, 1947, passed a resolution authorizing petitioner to proceed to the competitive bidding, on the basis of the plan outlined in its petition, as amended in conformity with earlier advisory resolutions, which petitioner reluctantly accepted and, in such resolution, imposed the conditions not contained in the petition, and in the earlier advisory resolutions, it was, in effect, a final determination that the " Commission " would approve and grant the relief sought by the petitioner under the conditions imposed by its resolution of June 3, 1947, and on those conditions only. Obviously, this

meant that if those conditions were not complied with, then the application of the petitioner was denied. Such a resolution had every element of a final determination.

More especially is it true, when after the adoption of such resolution, the petitioner advised it would not comply with the conditions thus imposed and asked the " Commission " that if such determination was final, that a rehearing be granted and such application was denied. It can hardly be doubted that there has been a determination of such finality in character as to entitle this petitioner to maintain the present proceeding. It seems to this court that to hold otherwise would be sacrificing substance for form.

It should be borne in mind that subdivision 3 of section 1285 of the Civil Practice Act does not require that a determination to be reviewed must take any particular form; such as an order. What is authorized to be reviewed is a *determination,* provided the determination is final.

Petitioner sought certain definite relief. In effect, the " Commission " determined that it would grant the relief, provided petitioner complied with certain conditions, with which it refuses to comply. Under such circumstances, it has received a final determination denying the relief sought by it, whatever name may be given to such determination, be it resolution, advisory resolution or what not.

With reference to the petition of " General " for intervention, it seems to this court that there are special reasons why the discretion of the court should be exercised in favor of granting the application. While it may be true that normally the stockholder of a corporation should not be allowed to intervene in a proceeding on the theory that the corporate management would do the things necessary to protect the stockholders' interests, it should be borne in mind that, in this case, " General " is the sole common stockholder of the petitioner; that beyond that " General," as a public utility holding corporation, is itself accountable to a large number of stockholders whose dividends are dependent in part at least on the dividends which " General " may receive on its common stock of the petitioner. The conditions sought to be imposed by the " Commission " if proper and lawful, would have a far-reaching effect on " General " and its receipt of dividends and so consequently on its ultimate payment of dividends to its stockholders. Under such circumstances, " General " has such a special interest in this litigation as, in the sound exercise of discretion, ought to permit it to intervene and its application is accordingly granted.

Motion of "General" to intervene is granted; motion of respondents to dismiss petition is denied; respondents are to file and serve answer within one week, after service of a copy of the order to be entered hereon, together with notice of entry thereof; and this proceeding is thereupon to be transferred to the Appellate Division, Third Judicial Department.

Submit order or orders accordingly.