John F. Scileppi, J.
Defendant moves (1) under subdivision 1 of rule 107 of the Rules of Civil Practice to dismiss tbe complaint on tbe ground that the court does not have jurisdiction of the subject of the action and that it should decline such jurisdiction, (2) under subdivision 4 of rule 106 to dismiss the complaint on the ground that it fails to state facts sufficient to constitute a cause of action, (3) under rule 113 for summary judgment and (4) under section 192 of the Civil Practice Act and subdivision 2 of rule 102 to drop Roséis Realty Corp. as a party plaintiff on the ground of misjoinder.
The fact situation may, perhaps, be more readily understood if it be stated at the outset that plaintiff Roséis Realty Corp. is the owner and plaintiff Equitable Paper Bag Co., Inc., the sole lessee of the improved premises involved in this action, that said premises are located in Long Island City, New York, and are *120 bounded on the north by Queens Boulevard, on the east by Van Dam Street, on the south by 47th Avenue and on the west by 31st Place.
The complaint alleges, in crucial part, as follows: Prior to October, 1956, plaintiffs applied to defendant for additional electric service for the proposed building extension of their manufacturing plant at Van Dam Street, an extension which was intended to be an enlargement of plaintiffs’ existing building and would, when completed, constitute one unit permitting interior communications within the entire building, as enlarged. According to schedules filed by defendant with the Public Service Commission (which are identified but not set forth), defendant is required to combine its billing for electric service where one customer has two or more meters, if so requested by the customer. Plaintiffs requested that the foregoing extension of their premises be serviced through vault facilities installed on the Queens Boulevard side of the premises, that defendant install a separate meter on the Queens Boulevard side of the new building addition and that plaintiffs be billed on a combined basis with respect to that meter and the Van Dam Street meter. Defendant, the complaint continues, arbitrarily refused plaintiffs’ request and advised them that it would supply the additional service requested on either of two bases, to Avit: “ a) defendant would enlarge its vault on Van Dam Street and require plaintiffs, at plaintiffs’ expense, to supply a conduit of about 325 feet extending from the vault to plaintiffs’ new building extension; or b) defendant would install a new vault and service entrance on Queens Boulevard to permit service for the new building extension from defendant’s Queens Boulevard feeder line through a separate meter, for which plaintiffs loould be billed separately.” (Emphasis supplied.) By reason of defendant’s position as sole supplier of electricity and its arbitrary and illegal action plaintiffs Avere forced to and did permit defendant to enlarge the Van Dam Street vault and service connection and were forced by defendant and did install a conduit line of approximately 325 feet extending from the Van Dam Street vault to the new building extension at a cost to plaintiffs of $30,000. In the next to last paragraph of the complaint plaintiffs allege that they ‘ ‘ duly complained to the Public Service Commission, Avhich refused to hear the matter upon the ground that it is not empowered by law to order refunds or assessed [sic} damages and plaintiffs were referred to the courts for relief.” Damages in the sum of $30,000 are demanded.
*121 The answer consists of general and specific denials and two affirmative defenses: the first, that Equitable’s exclusive remedy for a review of the commission’s ruling was in an article 78 (Civ. Prac. Act) proceeding; the second, that Roséis has no standing to maintain this action.
The first question to be decided is whether plaintiffs may maintain this action or whether their exclusive remedy was an article 78 proceeding, the time to pursue which has expired. Determination of this question requires a more detailed inquiry into Equitable’s complaint to the commission and the latter’s action thereon.
By letter dated August 28, 1957, Leonard E. Canno, vice-president of Equitable, wrote to the commission, as follows:
Prior to October 1956, we made application to Consolidated Edison Company (the company) for additional electric service of 200 kilowatts in lighting and 850 horsepower in motor for the proposed building extension of our plant at 45-50 Van Dam Street, Long Island City, New York.
The proposed extension was intended to be, in effect, an enlargement of our then existing building to constitute one unit and was built in a manner so as to permit easy interior communication within the building. Con Edison advised us that they would supply this additional service on either one of the following two bases:
(1) Con Edison would enlarge its vault on Van Dam Street and require us, at our expense, to supply a conduit of about 325 feet extending from the vault; or
(2) Install a new vault and service entrance on Queens Boulevard to permit service for the new building from Queens Boulevard.
However Con Edison notified us that if the latter choice was made, they would install two separate meters' and make charges for the service to the new portion of the building separate and apart from the charges in the existing portion of the building.
The cost of installing the conduit rmder basis (1) was about $28,500, but since the separate billing would exceed this amount in a short period of time, we had no alternative but to accede to this demand. Accordingly, the the conduit was installed hy us at a cost of about $28,500.
It now seems quite obvious that this arbitrary action taken by Con Edison was motivated by Con Edison’s desire to avoid electric service requested by customers which would fall under its tariff designated First Revised Leaf #24 — Rider C, for which application had previously been made by Con Edison to the Public Service Commission for cancellation. (This application is still pending.) Had Con Edison made the requested installation on Queens Boulevard, for which feeder lines were available, and permitted us to combine our billings for two meters as its Tariffs permit (First Revised Leaf #24 — Rider C), our expenditure of $28,500 could have been wholly avoided.
*122 We feel that Con Edison’s action was arbitrary and contrary to the conduct which is expected of a quasi-public corporation. We therefore request that the Public Service Commission investigate this matter, and, if the facts are found to be as here related, order that Con Edison reimburse us for the expenditure made necessary by its unwarranted arbitrary position.
The commission’s reply, dated September 19, 1957, was as follows:
This is in reply to your letter of August 28, 1957 concerning the application of Equitable Paper to the Consolidated Edison Company of New York, Inc. for electric service to an extension of the building occupied by Equitable Paper at 45-50 Van Dam Street, Long Island City and the Company’s unwillingness to render bills on a combined basis if an additional meter is provided for the extension.
The Commission has considered this matter and it is of the opinion: (a) that the building and the extension is within the purview of the Commission’s order in Case 10752 governing billing for service measured by two or more meters at a single location and (b) that in conformity with the provisions of that order, service furnished for the extension of Equitable Paper should be billed separately if metered at that point.
The Commission is of the opinion that no ground exists for any action respecting the Company’s billing procedure in this instance and as to the question of Equitable Paper’s claims for reimbursement, the Commission is not empowered by law to order refunds or assess damages, such matters being within the function of a court of competent jurisdiction.
On October 2, 1957, tlie attorneys for Equitable wrote the following letter to the commission:
We are the attorneys for Equitable Paper Bag Co., Inc. of 45-50 Van Dam Street, Long Island City, New York.
Our client recently made a complaint to the Public Service Commission of New York City concerning Consolidated Edison. A copy of that complaint is enclosed herewith.
On September 19, 1957, our client received a reply to its eomplaint in which the relief requested in its letter of August 28,1957, was denied.
Our client has therefore instructed us to request a formal hearing on this matter, and further asks that the hearing be held in New York City.
The commission’s reply, dated November 13, 1957, was as follows:
Your request on behalf of the Equitable Paper Bag Co., Inc. for a formal hearing on the matter of electric service to this company at 45-50 Van Dam Street, Long Island City, was considered by the Commission at its meeting of November 12. I am instructed to advise you that your request for a formal hearing is denied.
The position of the Commission in this matter was set forth in the letter of September 19 addressed to Mr. Leonard E. Canno, vice president of Equitable Paper Co., Inc.
*123 This action followed.
Defendant argues that this was a case of primary administrative jurisdiction (United States v. Western Pacific R. R. Co., 352 U. S. 59), that the rule of primary administrative jurisdiction may not be evaded by resort to an action at law (Meerow Press v. Consolidated Edison Co. of N. Y., 277 App. Div. 839, affd. 302 N. Y. 554; Leighton v. New York Tel. Co., 84 N. Y. S. 2d 369), that this action is an unlawful, collateral attack on the commission’s determination (United States Trust Co. v. Mayor, etc., of N. Y., 144 N. Y. 488; Godfrey v. Winona Lake Development Co., 194 Misc. 905) and that the procedures followed by the commission were appropriate to its determination and are reviewable only in an article 78 proceeding (Matter of McCaffrey v. Feinberg, 206 Misc. 737; Matter of Rochester Gas & Elec. Corp. v. Maltbie, 190 Misc. 308; Matter of Carroll Realty Corp. v. New York Edison Co., 141 Misc. 266).
Plaintiffs, on the other hand, urge that this is not a case of primary administrative jurisdiction (Hewitt v. New York, New Haven & Hartford R. R. Co., 284 N. Y. 117, 125; Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304, 310-311; Pennsylvania R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 132) and that since the commission did not have the power to grant the relief sought, it did' not have jurisdiction over the controversy.
The court agrees with plaintiffs that this is not a case of primary administrative jurisdiction. It is not the validity of defendant’s rules which plaintiffs’ question, but the discriminatory manner in which concededly valid rules have been applied to them. This involves a problem of construction not beset with the underlying factual complexities present in the case of United States v. Western Pacific R. R. Co. (supra, pp. 66-67) and thus brings this case within the authorities cited by plaintiffs (Hewitt v. New York, New Haven & Hartford R. R. Co., supra; Kovarsky v. Brooklyn Union Gas Co., supra; Pennsylvania R. R. Co. v. Puritan Coal Co., supra).
To say that this is not a case of primary jurisdiction, however, is not to say that this court should entertain jurisdiction of the subject of this action. (As will appear in the disposition of branch [4] of defendant’s motion, Roséis has no standing whatever to maintain this action.) It may be that Equitable could have resorted to this court without first complaining to the commission, as in. the Hewitt case (supra), or if, after complaining to the commission, the latter had refused to investigate the matter, as in the Kovarshy case (supra).' But here *124 Equitable complained to the commission, which investigated the complaint and rendered an adverse determination. Equitable then applied for a formal hearing, which application was also determined adversely to it. By such conduct Equitable abandoned its right to maintain this action. As noted by the Court of Appeals in the Kovarsky case (279 N. Y. 304, 312, supra), in distinguishing New York State Elec. & Gas Corp. v. Maltbie (266 N. Y. 521), “in that case there was an order in a proceeding before the Commission to which the company was a party, and it could have reviewed the order by certiorari, the usual practice, instead of instituting a new action. In the present action the plaintiff was not a party to the order fixing the rate, and thus he has not abandoned one method of review by seeking another.”
Unquestionably, the commission had the power to determine whether Equitable was entitled to combined billing. Indeed, an extensive investigation had been conducted by the commission in Case No. 10752, a “ Proceeding on motion of Commission as to practices of certain electric corporations of combining billing under one contract electric service rendered through two or more meters for the purpose of computing bills; rules and regulations prescribed ” (54 P. U, E. [NS] 295), and it was the order in that ease that the commission deemed determinative of Equitable’s complaint. Furthermore, in the very face of the commission’s letter upholding defendant’s refusal of combined billing and stating the commission’s lack of power to order refunds or assess damages, Equitable, through its attorneys, requested a formal hearing on their complaint, stating in that letter that on September 19 their client had received ‘ ‘ a reply to its complaint in which the relief requested in its letter of August 28,1957, was denied.”
The claimed right to combined billing was the very basis of Equitable’s complaint to the commission. The commission investigated the matter and determined that Equitable had no such right. The avowed basis of this lawsuit is the alleged “ duty imposed on defendant by its filed rate schedules, to furnish plaintiffs with electricity on a combined billing basis through separately installed meters.” (Affidavit of Charles L. Kramer, Esq., p. 5.) In other words, in an action to which the commission is not a party, plaintiffs seek to have this court reach a determination adverse to that already reached by the commission. This they may not do. (Cf. Matter of Beckmann v. Talbot, 278 N. Y. 146, 149-150.) Although this was not a case of primary administrative jurisdiction and Equitable had in *125 the first instance an option to proceed either before the commission or by action (cf. Pennsylvania R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 127-128, supra), it elected its remedy, and the fact that the commission stated in its decision that it did not have jurisdiction to order refunds or assess damages in no wise qualified the completeness or finality of its determination on the merits (cf. Leighton v. New York Tel. Co., 84 N. Y. S. 2d 369, 370, supra).
Accordingly, branch (1) of the motion is granted, the court being of the opinion that an article 78 proceeding was the exclusive remedy for Equitable to obtain a review of the commission’s determination, which was final, no specific form of such determination being required for purposes of an article 78 review (Matter of Rochester Gas & Elec. Corp. v. Maltbie, 190 Misc. 308, 315, supra). Even if it was not, and even if Equitable was entitled to a formal hearing, which this court believes it was not (see Rules of Procedure, Public Service Commission, rule ni, par. 2), Equitable’s remedy lay in a mandamus proceeding (Matter of Carroll Realty Corp. v. New York Edison Co., 141 Misc. 266, 271, supra).
In order, however, to avoid a referral of this matter back to this court in the event that on appeal its order granting branch (1) of defendant’s motion is reversed, the court will pass upon the remaining branches of the motion on their merits rather than dismiss them as academic. In doing so it will be assumed that each preceding branch of the motion has been denied.
Branch (2) of the motion, to dismiss the complaint for failure to state facts sufficient to constitute a cause of action, is granted. Plaintiffs base their right to relief in this action upon defendant’s Service Classification Riders B (Original Leaf No. 23) and C (Original Leaf No. 24), but neither set forth the provisions of those riders nor factually show that they were otherwise eligible for combined billing. (Kaplan v. Consolidated Edison Co. of N. Y., N. Y. L. J., June 4, 1947, p. 2197, col. 6.) Furthermore, and more basically, the court is of the opinion that plaintiffs have not alleged facts sufficient to show that they were “forced” to install the conduit at an immediate expense of some $30,000. Indeed, the facts pleaded indicate that plaintiffs voluntarily elected to pursue that alternative because of long range economic advantage rather than immediate business compulsion. ■ (See, generally, 3 Pomeroy’s Equity Jurisprudence [5th ed.], § 950a, pp. 771-774.)
Branch (3) of the motion, for summary judgment, is granted. The sole issue presented is one of law, to wit: Was Equitable *126 entitled - to the installation of another meter ■ on the Queens Boulevard side of its premise's on a combined' billing basis'? Equitable contends that it was. Paragraph 7(a) of the General Rules III, First Revised Leaf No. 12, provides in pertinent part that ‘ ‘ All electric service to a Customer at a single location will be rendered through a single meter ’ ’ with exceptions not here applicable. Rider B permits combined billing ‘ ‘ when the group of buildings or parts of buildings *' * * are under a common ownership or leasehold for not less than a 5 year term, of public record in the name of the Customer ” (emphasis supplied) and Rider C permits the same result wheh the very same typés of buildings similarly owned or leased- and also “ of public record in the name of the Customer” are intercommunicating. The physical facts support the opinion expressed by the chief of the commission’s power bureau, at page 3 of his report to the commission on Equitable’s complaint, where he said: “It is my opinion that the extension and the original building, both of which occupy an entire city block without structural separation or subdivision constitutes a' ‘ single location ’ and an application for a second meter at that location, its readings to be combined with readings of others for billing purposes, is subject to the provisions of the order in Case 10752 dated June 8, 1944.” (Emphasis in original.)
Equitable’s own description of the building fully supports that conclusion. In its letter to the commission dated August 28, 1957, Mr. Canno, vice-president of Equitable, wrote that “The proposed extension was intended to be, in, effect, an enlargement of our then existing building to constitute one unit and was built in a manner so as to permit easy interior communication within the building.” And virtually identical language is - contained in paragraph fourth of the complaint. (See, also, pars, fifth and twelfth.) Now, in opposition to this'branch of defendant’s motion, Mr. Canno states:
' ‘‘ The defendant has taken the position that the new structure is merely an enlargement of the old * * # and that as such it does not qualify under Riders B and C. -
“ Clearly there is a dispute on the factual situation as to whether the structures involved consist of two separate units which would qualify under Riders B and C or the enlargement of an existing Unit which would-constitute' a single unqualifying location.” - - -
In the opinion of this court the undisputed physical facts belie the existence of any such dispute. It may also be' noted that Equitable’s leasehold is iiot “ of public record”.
*127 Branch. (4) of the motion, to drop Roséis as a party plaintiff, is granted. That Roséis agreed with Equitable to beiar part of the cost of installing the conduit gives Roséis no standing to maintain this action against the defendant.
Settle order in accordance with the foregoing.